# Exhibit A

```
 1                      Volume:  I
 2                      Pages:  1-182
 3                      Exhibits:  1-5
 4           UNITED STATES DISTRICT COURT
 5            DISTRICT OF MASSACHUSETTS
 6   - - - - - - - - - - - - - - - - - x
 7   HEATHER KIERNAN,
 8             Plaintiff,
 9        v.                        CA No. 10131MLW
10   ARMORED MOTOR SERVICES OF AMERICA, INC.
11   And FRANCESCO CIAMBRIELLO,
12             Defendants.
13   - - - - - - - - - - - - - - - - - x
14
15        DEPOSITION OF FRANCESCO CIAMBRIELLO
16             Thursday, April 7, 2005
17                  10:00 a.m.
18             McLeod Law Offices, P.C.
19                77 Franklin Street
20           Boston, Massachusetts  02110
21
22   Reporter:  Carol A. Pagliaro, CSR/RPR/RMR
23
24
```

CERTIFIED ORIGINAL
LEGALINK BOSTON

```
1   A P P E A R A N C E S:

2       McLEOD LAW OFFICES, P.C.

3         By William J. McLeod, Esq.

4         77 Franklin Street

5         Boston, Massachusetts  02110

6         617-542-2956

7         Counsel for the Plaintiff

8       MORGAN, BROWN & JOY LLP

9         By Allison K. Romantz, Esq.

10        200 State Street

11        Boston, Massachusetts 02109

12        617-523-6666

13        Counsel for the Defendant

14          Armored Motor Services of America, Inc.

15      LAW OFFICE OF ATTY. DAVID R. ARDITO

16        By David R. Ardito, Esq.

17        Bates Building Suite 215A

18        7 North Main Street

19        Attleboro, Massachusetts  02703

20        508-431-2222

21        Counsel for the Defendant

22        Francesco Ciambriello

23

24
```

```
 1                    I N D E X

 2   EXAMINATION OF:                              PAGE

 3   FRANCESCO CIAMBRIELLO

 4   By Atty. McLeod                                 4

 5

 6

 7

 8

 9

10

11                  E X H I B I T S

12   NO.                                         PAGE

13    1  Copy of the application submitted to

14       AMSA                                      40

15    2  Introductory Period Memo                  48

16    3  Smoking Policy                            53

17    4   Sexual Harassment Policy                 56

18    5   Attleboro Police Department Statement

19       of Rights                                155

20

21

22      *Original exhibits attached to original

23   transcript.

24
```

1    A.   Yes, boring.
2    Q.   Is there a place that you would typically
3  hang out or would you, during that 4 or 5 hour
4  period, just kind of sit in one location?
5    A.   Yes, sit by the phone.
6    Q.   So after everyone left, after all the
7  drivers and messengers went out, you were alone for
8  about 4 or 5 hours, and then Heather Kiernan showed
9  up to work?
10   A.   Yes.
11   Q.   What was she wearing that day?
12   A.   I don't remember.
13   Q.   Prior to that day had you ever had any
14 discussion with her about her having a baby?
15   A.   No.
16   Q.   Ever have any discussions with her about her
17 husband prior to that day?
18   A.   Yes.
19   Q.   So what discussions did you have with her
20 prior to that day about her and her husband?
21   A.   She was telling me the husband no love her,
22 he no take care of her, he is really bad, watching
23 video porn, smoke pot.
24   Q.   She was saying these things about her

1    Q.   When was the first time you had physical
2  contact with Heather Kiernan?
3    A.   We were in the, what they call, check-in
4  counter area, and she come in work, and she say the
5  shoulder was hurt, if I can rub her head and her
6  shoulder.  I rub her head and her shoulder for a
7  while, and then she start and push against me, push,
8  and push, and then we started getting a little bit
9  hot, and then we walk in the room, and then we start
10 to hug and kiss again.
11   Q.   The room that you are talking about, that is
12 Mr. Khoury's office, correct?
13   A.   Correct.
14   Q.   You went into that room with her on May 19,
15 2001, correct?
16   A.   We both went in the room.
17   Q.   My question, however, was not with regard to
18 May 19, 2001, it's with regard to the days before
19 that, the times that you two were working alone
20 prior to May 19, 2001.  Did you ever have physical
21 contact with her prior to that day?
22   A.   No.
23   Q.   So prior to that day you had never rubbed
24 her shoulders?

1  Q. And while you were unlocking the door she
2  didn't say I don't want to go in there or anything
3  like that?
4  A. No, she don't say nothing.
5  Q. Prior to that time she didn't say, I don't
6  want to go in there?
7  A. No.
8  Q. Who was the first person to walk into the
9  office?
10 A. She did.
11 Q. Did you have your hand on her at that point?
12 A. No.
13 Q. Did you tell her to get in?
14 A. No.
15 Q. She just went in on her own accord?
16 A. Yes.
17 Q. And you didn't say anything to her at all?
18 A. No.
19 Q. And you followed her in?
20 A. Yes.
21 Q. And you shut door behind you?
22 A. I think the door shut by itself. I don't
23 really remember, but I think the door shut by
24 itself.

1  activity.  There was her and me; both were.  She
2  want to do that, she want to be -- I assume, I
3  understand, probably she started the shoulder for go
4  some other place.
5      Q.  And as I recall, because as you are
6  testifying, she wanted to go in that room with you,
7  right?
8      A.  Yes.
9      Q.  And at no time did she say to you I don't
10 want to go in there?
11          ATTY. ROMANTZ:  Objection.
12     A.  No.
13     Q.  If she had said to you, I don't want to go
14 in there, would it have been appropriate for you to
15 go into that room with her?
16          ATTY. ROMANTZ:  Objection.
17     A.  No.
18     Q.  When you are at AMSA you can't smoke inside?
19     A.  Some people smoke in the garage, the break
20 room, some people they go outside.  It depends.
21     Q.  But if you were to go outside the building
22 you need to secure the vault; is that what you need
23 to do?
24     A.  The vault is already secure.  The part of

1  Commonwealth of Massachusetts
2  Suffolk, ss.
3      I, Carol A. Pagliaro, Registered Professional
4  Reporter and Notary Public in and for the
5  Commonwealth of Massachusetts, do hereby certify
6  that FRANCESCO CAMBRIELLO, the witness whose
7  deposition is hereinbefore set forth, was duly sworn
8  by me and that such deposition is a true record of
9  the testimony given by the witness to the best of my
10 skill and ability.
11     I further certify that I am neither related to,
12 nor employed by, any of the parties in or counsel to
13 this action, nor am I financially interested in the
14 outcome of this action.
15     In witness whereof, I have hereunto set my hand
16 and seal this 25th day of April, 2005.
17
18
19                  _____
20
21 Carol A. Pagliaro, RMR
22 Notary Public
23 CSR No. 123293
24 My commission expires April 28, 2011

CERTIFIED ORIGINAL
LEGALINK BOSTON

# Exhibit B

## ** Arrest Report **

```
Inc Type  : RAPE                            Incident #: 1051819
Location  : 12 UNION ST / APD               Inc Code: 200
Date : 05/22/01   Time: 2001                Geo Code: 40
Actual Incident: RAPE

Unit(s) Responding: D6 ( OTRANDO)
```

---

Arrested Person(s):

   Name: CIAMBRIELLO, FRANCISCO T
        DOB: 02/02/54    SSN#: 015549268
        Arrest/Event Type: ARREST    Date: 05/22/01  Time: 2001
        Charges: RAPE
        Charges: INDECENT A&B, CHILD 14+

---

Report by 153 OTRANDO

Narrative:

On May 20th, 2001 Detective Otrando responded to Sturdy Memorial Hospital at approximately 1:30am in reference to a rape. Upon the detectives arrival he spoke with Officers Larsen, Castro and Boisse.

Officer Larsen had been the initial officer that responded to Sturdy Hospital when the Police Department had been notified by the hospital that a rape victim had come to the hospital for treatment.

The victim, Heather Kiernan informed Officer Larsen that she is employed by Armored Motor Services of America (AMSA), 41 Walton Street in Attleboro. Kiernan advised Officer Larsen that she had been sexually assaulted at work by a co-worker.

Kiernan informed Officer Larsen that she went into work at 2:30pm on May 19th, 2001 (Saturday). Kiernan states that she was locked inside the building with a male supervisor identified as "Tony".

Kiernan states that while sitting in the dispatch area of the building, "Tony" started rubbing her back with his hands, according to Kiernan "Tony" worked his hands down to her waist and then to the front of her pants. Kiernan states that Tony the unbuttoned her pants. Kiernan states that she resisted Tony, she got up and buttoned her pants back up. Kiernan states that Tony unbuttoned her pants again and pulled them down. She then pulled her pants back up, this occurred three or four times.

Kiernan states that Tony dragged her by her right arm and grabbed both of her arms from behind and walked her to the boss's office. She states that they walked through the money room and then down a hallway to the boss' office. Tony then unlocked the door and brought her into the office.

Page 1

** Arrest Report **

Incident: 1051819
Taken by: OTRANDO

Once inside Kiernan said that Tony pulled her pants down at least four times as she kept pulling them back up. On the final try Tony held her left arm behind her back and used his other hand to hold her pants down. She states that Tony performed oral sex on her, he also digitally penetrated her vagina with one finger several times. At one point she states that Tony took his erect penis out of his pants and asked, "you wanna suck it".

Kiernan also informed Officer Boisse that during the assault "Tony" bit her on her breast and inner thigh. After the attack Kiernan states that she went into the bathroom and locked herself inside. She states that "Tony" did not follow her inside and that after several minutes she went back out and "Tony" asked her if she wanted a soda.

Kiernan states that she was in fear of "Tony" at the time of the attack because at the time he was wearing a Smith and Wesson 40-caliber firearm. She states that she was able to telephone a co-worker, Christine Parrott, who then came down to AMSA.

Once she saw Parrott she told her what had occurred and Parrott stayed at AMSA until they left the building. Kiernan states that she arrived home at approximately 11:00-11:30pm and she told her husband (John) that something bad had happened. She then informed him of what had occurred and a North Attleboro Rescue responded to their home and transported her to Sturdy Memorial Hospital. Evidence in the form of a "rape kit" was taken by hospital personnel and handed over to Officer Larsen who transported the kit to the station.

Officer Larsen, Castro and Detective Otrando responded to AMSA and spoke with supervisor Jason Khoury. He states that Kiernan was working on Saturday with "Tony" whom he identified as Francesco Ciambriello of 242 Temi Street in Raynham, Massachusetts.

Khoury states that there are approximately sixteen cameras in the building that tape video and audio. Officers then viewed the video from the night in question. Also present was Director of Security Ed Obrien.

Upon viewing the tape the officers observed Ciambriello talking with two females, one was the victim Kiernan, the second was identified as Christine Parrott. All three parties were outside AMSA and appeared to be talking.

Another section of tape shows Ciambriello seated beside Kiernan while she entered work into a computer at her desk. It appeared that Ciambriello was talking to Kiernan.

Another section of tape shows Ciambriello walking with his right arm around the back of Kiernan through the money processing area. Ciambriello's hand is positioned on the right buttocks/waist area or Kiernan. The tape continues to roll, showing both subject walk down a corridor. It shows Kiernan in

Page 2

front of Ciambriello with his hand(s) on her waist, it also appears that he is very close to her and immediately behind her. Kiernan is then directed into the back office and the door closes. After several minutes Kiernan emerges from the office with Ciambriello following, Kiernan turns left towards the bathrooms.

On May 21st, 2001 Heather Kiernan and her husband John came to the Attleboro Police Department in order to complete a written statement of the events that transpired on May 19th, 2001. Kiernan completed a seven page detailed account of the events that lead to and followed the assault by Ciambriello. (STATEMENT ATTACHED)

She arrived at work at approximately 3:00pm. She states that Tony had been talking about how he had been out drinking until 4:30am the night before. She states that Tony followed her into her office where he started to tell her that maybe next weekend he would bring a movie to watch and some wine they could put in empty soda cans.

She states that she contacted her friend, Parrott about coming to AMSA so she could pick up some wine for her and Christine to have after she got out of work. When Parrott arrived they had a cigarette outside where Tony joined in on the conversation.

Kiernan told Tony how she was inside Jason's office talking about sexual harassment when Tony told her, "you were in Jay's office all by yourself you must have liked that".
Once back inside dispatch Kiernan again began to talk about staying out late the night before. Somehow the conversation she states turns to smoking pot, Tony tells her that he does it every once and awhile that it helps him relax, but he said "I can't do it to much it makes me horny". Ciambriello then began to talk about cocaine stating that "the only thing I haven't tried yet is coke, my friends tell me it makes you want to have sex all night". Tony asked Kiernan "does it make you cum a lot". He then stated to her "I'm surprised your husband doesn't cum all over you".

At this time Kiernan states that Ciambriello moved his chair closer to hers and pulled her against her penis. She states she pushed herself back and he pulled her back towards him. She states that he began to massage her shoulders, Kiernan states that she was so nervous she was shaking. He then started rubbing her legs and pulling her towards him and then touched her breasts and stuck his hand under her shirt and lifted her bra to touch her breast. She then pulled her shirt down, he then pulled his face towards hers and started kissing her, she states that she attempted to push away but he was holding her head and she recalled that his moustache was scratching her face.

She states that he then unbuttoned her pants and she stated to him that she was not going to do this and he then stuck his hand down her pants. He then grabbed her by the arm and said, "come with me" she stated that she told him

Page 3

ATTLEBORO POLICE DEPARTMENT
Case 1:04-cv-10131-RBC   Document 46-2   Filed 06/06/2005   Page 14 of 16

** Arrest Report **

```
                                              Incident: 1051819
                                              Taken by: OTRANDO
```

that she would not go there. She states that he had her by the shoulders and brought her to Jay's office. She recalled that there were little police cars on the cabinets and tried to make conversation to divert his attention.

She states that Ciambriello then pulled her towards him and started kissing her, he then attempted to pull her pants down as she tried to hold them up. He then was able to pull them all the way down and held them with one hand while he went onto his knee's, she states that he stuck one of his fingers into her vagina and then began to have oral sex with her as well as bite her.

Kiernan states that she was thinking of a way out when Ciambriello told her to get on the table. She then told him that she had to go to the bathroom as she walked towards the door. On the way out Ciambriello took out an erect penis and told her, "do you wanna suck it". She states that she left the office and turned left and entered the women's bathroom with Ciambriello following her. She states that Ciambriello did not go into the bathroom and that she locked herself inside a stall.

After several minutes she left the bathroom and Ciambriello asked her if she wanted soda. Once inside the dispatch area Kiernan states that she told Ciambriello that she wanted to leave to have a cigarette, he told her that she could have it in the building. She states that after the cigarette Ciambriello began to massage her shoulders and tried to touch her breasts.

She then told him that she had to call her friend Christine to see if she got the wine, once on the phone she asked Parrott to come to AMSA that she had something to tell her. Once Parrott arrived Kiernan went out to the parking lot and told Parrott what had occurred and asked her to go back inside with her.

Kiernan recalls that while she was checking out the last truck she made several mistakes on the paperwork because she was so nervous. She states that she and Parrott left AMSA at about 8:15pm and drove to Parrott's house on Hood Street in Attleboro. They then went to a co-workers home in Johnston, Rhode Island. The co-worker is identified as Michael Pascetta. Kiernan states that while at Pascetta's home Parrott told Pascetta of what transpired at AMSA between Kiernan and Ciambriello.

She states that she returned home at approximately 11:30pm and spoke with her husband about the incident.

Kiernan states that she was in fear of Ciambriello because he had gun, she states that at no point did he take the gun out but she was unsure what he was capable of. Kiernan states that Ciambriello on prior occasions has unbuttoned his pants in front of her to tuck in his shirt. He has also told her in Italian that she has a beautiful face on prior occasions (Tu abella facia)

Page 4

** Arrest Report **

Incident: 1051819
Taken by: OTRANDO

On May 20th, 2001 Detective Otrando conducted an interview with Christine Parrott (Written statement attached). Parrott gave a similar account of what Kiernan had told the detective. She had received a call from Kiernan about coming to AMSA, once in the parking lot Kiernan told her what had occurred. She then went inside to keep Kiernan company. They then left at approximately 8:15pm and went to a Michael Pascetta's home in Johnston, Rhode Island.

On May 22nd, 2001 Detective Otrando conducted an interview with Michael R. Pascetta in reference to the incident. He verified that the two females, Kiernan and Parrott came to his home in Johnston, Rhode Island on Saturday night. He recalls that Kiernan was not talkative as usual and that she smoked a lot of cigarettes. He recalls that Parrott told her that Ciambriello attempted to undo her (Kiernan's) pants and dragged her into Jay's office. Pascetta states that Parrott did not go into great detail about the assault. However Kiernan nodded in agreement as Parrott told the story.

On May 22, 2001 at approximately 7:30pm. Ciambriello came to the Attleboro Police Department at the request of Detective Otrando. Ciambriello was interviewed on the second floor of the police station. Ciambriello was advised of his rights under the Miranda decision. He was then asked if he understood his rights, he stated that he did. He was then allowed to read those rights and signed a form indicating that he understood them.

Ciambriello states that on Saturday May 19, 2001 he was working at AMSA with Heather Kiernan. The detective then asked if anything had occurred on that day, he replied no. He was then asked if he recalled talking to Kiernan about smoking marijuana, he replied no, he doesn't smoke it. When asked if he made a statement about marijuana making him horny he denied making such a statement. He was then asked if he talked about cocaine with Kiernan, telling her that he has heard you want to have sex all night while on it. Ciambriello denied making this statement to her. He was then asked if he spoke with Kiernan about being out late the night before and drinking until 4:30am, again Ciambriello denied talking with Kiernan about this.

He was then asked if at any time did he place his hands upon her in any way, he replied that at no time did he touch Kiernan in any way. He was then told that he was on video with his right arm around her waist walking through a room side by side, down a hallway directly behind her with his hands on her, again he denied doing this. He was then asked if he brought Kiernan into Jay's office, he replied no. Again he was advised that he was on video walking down the hallway going into Jason Khoury's office with Kiernan. Again he denied going into the office. He was then asked if he made a statement to Kiernan that "I'm surprised your husband doesn't want to cum all over you". Again Ciambriello denied making this statement to Kiernan.

He was asked if he had offered to bring in movies and wine for he and Kiernan to have the following week at work, he replied no, he would not jeopardize his job like that. The detective then read from Kiernan's statement about

Page 5

** Arrest Report **

Incident: 1051819
Taken by: OTRANDO

how Ciambriello undid her pants and massaged her breasts and then dragged her out of the dispatch area and brought her to the office in the back of the building, Ciambriello denied doing anything wrong on Saturday.

He was then asked if he had performed oral sex on Kiernan or placed his finger in her vagina, again he denied doing any of these things. He stated that he was not going back to work there anymore, that he was through working there. The detective notes that all during the interview Ciambriello appeared nervous and evasive in the answering of the questions that were presented to him. At one point Ciambriello told the detective "are you gonna arrest me, go-ahead lock me up".

He was then placed under arrest for rape and indecent assault and battery, Sergeant Bennette who again advised him of his rights under the Miranda decision then booked him in. He was then advised of the charges and allowed use of the phone, he was then searched and placed into cell M-3.

Reporting Officer: _____
Shift Commander: _____   Refer To: _____