# TAB 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HEATHER KIERNAN,

    Plaintiff,

v.

ARMORED MOTOR SERVICES OF
AMERICA, INC. and FRANCISCO
CIAMBRIELLO,

    Defendants.

Civil Action No. 10131

### DECLARATION OF MICHAEL BUCCI IN SUPPORT OF DEFENDANT ARMORED MOTOR SERVICES OF AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT

MICHAEL BUCCI, declares pursuant to 28 U.S.C. § 1746 under penalty of perjury that the following is true and correct:

1. I served as President of Armored Motor Services of America, Inc. ("AMSA") between January 1, 1995 and July 1, 2003.

2. Up until July 1, 2003, AMSA was in the business of collecting and supplying banks and businesses with money and supplying ATM machines with cash for monetary transactions.

3. On July 1, 2003, AMSA sold all of its assets to Loomis, Fargo & Co. and amended its certificate of incorporation to reflect a name change from "Armored Motor Services of America, Inc." to "Victor Heights Holding Corp."

4. Effective September 30, 2003, Victor Heights Holding Corp. merged with and was subsumed by New Mallard, LLC.

1

5. In 2001, AMSA operated a vault and cash collection/distribution facility in Attleboro, Massachusetts.

6. Francesco Ciambriello was hired by AMSA in 2001 to work in AMSA's Attleboro facility. Mr. Ciambriello was a non-exempt hourly employee at AMSA, earning $11.50 per hour at the time of his termination from employment.

7. As a part-time vault supervisor, Mr. Ciambriello did not have the authority to hire or fire any employees, nor did he have the authority to discipline employees. He was not responsible for evaluating employees' performance, nor involved in decisions regarding promotion, demotion or discipline.

8. As a part-time vault supervisor, Mr. Ciambriello was not responsible for scheduling hours of work for any employees or directing the work of others.

9. As a part time vault supervisor working on a Saturday with only a data entry clerk in the facility with him, Mr. Ciambriello's sole responsibility was for maintaining the security of the vault, getting the money out of the vault and onto the trucks in the morning, serving as the dispatcher during the day for the trucks to report where in their route they were and to get the money off the trucks and back into the vault and secure the vault in the evening when the trucks returned from their run.

10. As a date entry clerk, Ms. Kiernan's sole role on Saturday would be to input the data into the computer system when the money came off the trucks. She had no other duties or responsibilities and there would have been no oversight or direction needed from Mr. Ciambriello or anyone else.

Signed under the pains and penalties of perjury this 1ST day of February, 2006.

Michael Bucci

3