UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **HEATHER KIERNAN,**<br>    **Plaintiff,**<br><br>                  v.<br><br>**ARMORED MOTOR SERVICES OF AMERICA, INC. and FRANCISCO CIAMBRIELLO,**<br>    **Defendants.** | **Civil Action No. 10131** |

**DEFENDANT ARMORED MOTOR SERVICES OF
AMERICA, INC.'S MEMORANDUM OF LAW IN
<u>SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

**I.     INTRODUCTION**

Defendant Armored Motor Services of America, Inc. ("AMSA") hereby submits the following memorandum in support of its Motion for Summary Judgment. Plaintiff Heather Kiernan ("Ms. Kiernan" or "Plaintiff"), a part-time data entry clerk at AMSA's Attleboro, Massachusetts facility has brought this action claiming that she was subjected to a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* and M.G.L. c. 151B. Plaintiff's sexual harassment claim is based on her claim that she was raped by defendant Francesco Ciambriello ("Mr. Ciambriello") on May 21, 2001 when the two were working alone in the Attleboro facility.

      AMSA now moves for summary judgment on both claims against it. As grounds for this Motion, and as set forth more fully herein, AMSA states that judgment should enter in its favor because the undisputed facts reveal that Plaintiff cannot prevail as a matter of law on either of her

counts against AMSA because as a co-worker, AMSA cannot be held liable for Mr. Ciambriello's actions because: (1) it neither knew nor should have known about Mr. Ciambriello's alleged sexually inappropriate proclivities prior to the alleged assault; and (2) once it learned of Plaintiff's allegation, AMSA acted promptly and effectively by immediately and permanently removing Mr. Ciambriello from the work place. Even assuming that Mr. Ciambriello was found to be Plaintiff's supervisor, summary judgment on Plaintiff's Title VII claim is nonetheless still appropriate because AMSA has met its burden of proof that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and that Plaintiff unreasonably failed to take advantage of AMSA's sexual harassment policy.

## II.     STATEMENT OF UNDISIPUTED FACTS[1]

Defendant AMSA hereby incorporates and makes reference to Defendant AMSA's Statement of Material Facts as to Which There Is No Genuine Issue Exists to Be Tried ("Facts"), filed herewith.

## III.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56( c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is an absence of evidence to support the non moving party's case. *Celotex Corp. v. Catrett*, 477 U.S.

---

[1] The undisputed material facts set forth herein are accepted as true for purposes of AMSA's Motion for Summary Judgment, only.

317, 325, (1986).  Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.  *Anderson*, 477 U.S. at 256.  "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id*.  Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.

As will be set forth below, Plaintiff cannot show that there are any genuine issues of material fact which are in dispute between the parties.  On the undisputed material facts of record, AMSA is entitled to summary judgment on both claims asserted by Plaintiff against it.

## IV.   ARGUMENTS AND AUTHORITIES

### A.   The Undisputed Evidence Shows that Plaintiff Cannot Establish a Claim of Sexual Harassment Against AMSA.

To establish a sexually hostile work environment claim under both Title VII and M.G.L. c. 151B, a plaintiff must show that she was subjected to unwelcome sex-based harassment that was sufficiently severe or pervasive to alter a term, condition or privilege of her employment. *Meritor Savings Bank v. Vinson*, 477 U.S. at 67-68, *Ramsdell v. Western Massachusetts Bus Lines, Inc*., 415 Mass. 673, 678 (1993).  If the plaintiff makes that showing, and if the harassment was committed by a co-worker, the plaintiff must also establish that the defendant employer "knew or should have known of the conduct and failed to take proper remedial action." *Guess v. Bethlehem Steel Corp*., 913 F.2d 463 (7th Cir. 1990); *Swentek v. USAIR*, 830 F.2d 552, (4th Cir. 1987)(test is whether employer had knowledge and took corrective action);  *Noviello v. City of Boston,* 398 F.3d 76 (1st Cir. 2005)(standard for employer liability for coworker hostile

work environment harassment essentially coterminous under Title VII and Chapter 151B); *Messina v. Araserve, Inc.*, 906 F.Supp. 34, 37-38 (D.Mass. 1995)(discussing Masschusetts law). If the alleged harassment was committed by an employee who supervised the plaintiff, the defendant as her employer is not vicariously liable for the harassment under Title VII if it can establish the affirmative defense defined in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 807-08 (1998)("*Faragher/Ellerth*"). Specifically, the affirmative defenses are: (1) that the employer exercised reasonable care and promptly corrected any sexually harassing behavior; and (2) that the employee unreasonably failed to take advantage of any protective or corrective opportunities provided by the employer or to avoid harm otherwise. *Id.*

In this case, Plaintiff, a part time data entry clerk, has alleged that she was sexually assaulted by Francisco Ciambriello, a part time vault supervisor. Because the undisputed evidence demonstrates that Mr. Ciambriello was not a supervisor as that term is applied under Title VII and Chapter 151B, Plaintiff's sexual harassment claim can not survive summary judgment because she can not show that AMSA knew or should have known about the harassment by Mr. Ciambriello, yet failed to stop it.

### 1. Ciambriello Was Not Plaintiff's Supervisor

The First Circuit has recently addressed who is a "supervisor" for purposes of the *prima facie* case in a Title VII sexually hostile work environment claim. In *Noviello v. City of Boston*, 398 F.3d at 97, the First Circuit recognized that it "must distinguish employees who are supervisors merely as a function of nomenclature from those who are entrusted with actual supervisory powers." *Id. citing Parkins v. Civil Constructors of Ill., Inc*., 163 F.3d 1027, 1033 (7th Cir. 1998). In *Noviello*, the First Circuit held, consistent with the majority of circuits that

4

"the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment." *Id.* The Court went on to hold that this authority "consists of the power to hire, fire, demote, promote, transfer, or discipline an employee." *Id*. at 1034. *See also Cheshewalla v. Rand & Son Construction Co.*, 415 F.3d 847, 850 (8th Cir. 2005); *Joens v. John Morrell & Co.*, 354 F.3d 938 (8th Cir. 2004); *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1033 (7th Cir. 1998); *Mikels v. City of Durham*, 183 F.3d 323, 334 (4th Cir. 1999)   The First Circuit concluded in *Noviello* that "**without some modicum of this authority, a harasser cannot qualify as a supervisor for purposes of imputing vicarious liability to the employer in a Title VII case**, but rather, should be regarded as an ordinary coworker[2]." *Id*. at 96 (emphasis supplied). The First Circuit further recognized that "the same standard applies under chapter 151B." *Id*.

In the instant case, the undisputed evidence shows that Francisco Ciambriello was a supervisor in name only. Although Mr. Ciambriello responded affirmatively when asked at deposition whether he was a supervisor[3], he was not asked to define what he meant when he stated that he was a supervisor. *(Facts, at ¶ 14)*. When probing beyond Mr. Ciambriello's title of vault supervisor, it becomes clear that Mr. Ciambriello was actually not imbued with any actual supervisory powers. Although Mr. Ciambriello testified at his deposition that "on weekends he was the supervisor," he also testified that when he worked during the week he was not the supervisor and that his duties did not change in any way on the weekend from his duties during the workweek when he "was not a supervisor." *(Facts, at ¶ 14).*   It is undisputed that

---

[2]   In *Noviello*, the First Circuit explicitly declined to adopt the broader view of the Second Circuit which has held that someone who has actual authority to direct an employee's work related tasks in a way that could increase workload or saddle her with less desirable tasks is to be considered a supervisor. *See Noviello, Id*. at Fn. 5 citing *Mack v. Otis Elev. Co*., 326 F.3d 116, 126-27 (2d Cir. 2003).

[3]   English is not Mr. Ciambriello's native language and he describes his English skills as "bad." *(Facts, at ¶ 17)*.

5

Mr. Ciambriello did not have the authority to hire or fire.  *(Facts, at ¶ 9)*.  Nor did he have the authority to promote, transfer or discipline any employee. *(Facts, at ¶ 11)*.  Mr. Ciambriello was not responsible for evaluating Plaintiff's performance.  *(Facts at ¶ 10)*.  Like Plaintiff, Mr. Ciambriello was a part time, hourly employee.  *(Facts, at ¶ 8)*.  Mr. Ciambriello's job duties as the vault supervisor were limited to sending the delivery trucks on the road, acting as the dispatcher while the trucks were on their routes, making sure the trucks delivered the correct amount of money and making sure that the building was safe and secure.  *(Facts, at ¶ 14)*.  Because Plaintiff's only job duty on her Saturday afternoon shift was to enter data regarding how much money was being delivered into the facility from the trucks and where it came from into AMSA's computer system, there was no need for Mr. Ciambriello to assign or direct Plaintiff's work. *(Facts, at ¶ 12)*.   Finally, Mr. Ciambriello was not assigned or expected to review Plaintiff's work once she stated she was done to ensure it was accurate and fully completed. *(Facts, at ¶ 12)*.   While Mr. Ciambriello was responsible for the security of the vault as well as the security of the building on May 21, 2001, and therefore oversaw Plaintiff's access into and out of the building, that responsibility is more akin to a security guard than to a supervisor.  Simply put, the undisputed evidence in the record clearly and unequivocally shows that Mr. Ciambriello held no supervisory duties or responsibilities over Plaintiff despite his job title

> **2. There is no evidence to show that AMSA knew of or should have known of the alleged harassment or that it failed to take prompt and effective <u>remedial action.</u>**

Because Mr. Ciambriello must be considered a co-worker and not a supervisor of Plaintiff's, Plaintiff must establish that AMSA knew or should have known of the sexual harassment and failed to implement prompt and appropriate action in order to hold AMSA liable for the alleged harassment.  *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 401 (1st Cir. 2002);

*Brissette v. Franklin County, Sheriff's Office*, 235 F.Supp.2d 63 (D.Mass. 2003)(approach taken by Massachusetts Supreme Judicial Court to "hostile environment" claims brought under 151B does not differ greatly from analysis under Title VII).   Where an employer takes prompt and effective remedial action upon learning of harassing conduct, summary judgment is appropriate. *Hayes v. Henri Bendel, Inc.,* 945 F.Supp. 374 (D.Mass. 1996).

There is absolutely no evidence that any management or supervisory employee at AMSA had any inkling about the alleged harassment, much less knew, or should have known, that Mr. Ciambriello was either harassing Plaintiff or was likely to sexually assault her when working alone in the facility with her.  Mr. Ciambriello had worked with AMSA's branch manager for a number of years at a competitor before they both joined AMSA in 2001 and the branch manager was aware that no employee at that competitor had ever complained about Mr. Ciambriello's conduct. *(Facts, at ¶ 16).*  Nor had any employee of AMSA complained about Mr. Ciambriello before Plaintiff alleged that Mr. Ciambriello raped her on May 19, 2001.  *(Facts, at ¶ 16).* Moreover, although Plaintiff testified that prior to the date of the alleged sexual assault, she believed that Mr. Ciambriello had acted in a sexually inappropriate manner when he had unbuttoned his pants to tuck in his shirt in her office, Plaintiff admitted that she had never reported or complained to management about that incident.  *(Facts, at ¶ 25).*

Nor can Plaintiff show that AMSA failed to take proper remedial action once it learned of Mr. Ciambriello's alleged harassment.  Mr. Ciambriello was suspended by AMSA immediately after AMSA learned that Plaintiff was alleging that she had been raped by Mr. Ciambriello. *(Facts, at ¶ 53).*  Mr. Ciambriello never returned to work at AMSA and his employment was terminated by AMSA that same week. *(Facts, at ¶ 54).*  Thus, the evidence demonstrates that immediately upon learning of the alleged harassment, AMSA took prompt and effective remedial

7

action to ensure that any harassment ended[4].

Accordingly, because Plaintiff has not and cannot establish that AMSA knew or should have known of the sexual harassment by Mr. Ciambriello and because Plaintiff has not and cannot establish that AMSA failed to implement prompt and appropriate action, summary judgment should be granted to AMSA on both Plaintiff's Title VII and Chapter 151B claims.

### 3. Even if Ciambriello Is Considered Ms. Kiernan's Supervisor, Her Title VII Claim Is Defeated by AMSA's Affirmative Defenses.

Even if the Court deems that Mr. Ciambriello is to be considered Ms. Kiernan's supervisor, under Title VII AMSA is protected by the *Faragher/Ellerth* affirmative defense. This defense consists of two elements, which, if proven, permit AMSA to avoid liability. First, AMSA must show that it "exercised reasonable care to prevent and correct promptly" any sexually harassing behavior. *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. Second, AMSA must show that Plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by AMSA or to avoid harm otherwise." *Id.*

There can be no question that AMSA did take reasonable precautions to prevent and correct promptly any sexually harassing behavior by its employees. AMSA had a policy against sexual harassment that included a procedure that called for employees to present complaints either to their manager or directly to Debbie Gates, Personnel Director for AMSA. *(Facts, at ¶ 21)*. Every employee, including Plaintiff and Mr. Ciambriello, is provided with a copy of AMSA's sexual harassment policy at time of hire and required to review it and sign an

---

[4] Presumably, Plaintiff will try to make an issue out of the fact that AMSA suspended and ultimately terminated Mr. Ciambriello for a breach of another company policy and not for to the alleged sexual assault. However, the fact that AMSA terminated Mr. Ciambriello for violation of company policy related to vault security does not in any way alter the fact that the action that AMSA took brought to an end any harassment which is what was required of AMSA.

acknowledgement indicating their receipt and review of the policy. *(Facts, at ¶¶ 19 and 20).* AMSA provided sexual harassment training to its managers and supervisory staff. (*Facts, at ¶ 22*). Finally, AMSA removed Mr. Ciambriello from the workplace immediately upon learning of Plaintiff's report to the police. (*Facts, at ¶ 53*). Accordingly, AMSA fully satisfied the first prong of the affirmative defense.

Nor can there be any question that AMSA has satisfied the second prong of the affirmative defense as well. Plaintiff has acknowledged that she did not report an earlier incident where Mr. Ciambriello unbuttoned his pants in her office although she found his conduct inappropriate. *(Facts, at ¶ 23 and 25)*.

Accordingly, even if Mr. Ciambriello is determined to be Plaintiff's supervisor, AMSA cannot be held vicariously liable for his alleged harassment of Plaintiff under Title VII as it has satisfied its obligations under the *Faragher/Ellerth* affirmative defense.

## V.   CONCLUSION

The record evidence demonstrates that Mr. Ciambriello was a co-worker of Plaintiff's and not her supervisor and therefore the co-worker standard of liability must be applied to Plaintiff's Title VII and M.G.L. c. 151B sexual harassment claim. Because it is undisputed that prior to May 21, 2001, no manager at AMSA knew or had reason to know that Mr. Ciambriello was sexually harassing Plaintiff or any other female employee and because AMSA took prompt, effective remedial action to bring the alleged harassment to an end once it learned of any possible problem, AMSA can not be held liable for Mr. Ciambriello's conduct. Finally, even if Mr. Ciambriello was Plaintiff's supervisor, AMSA nevertheless can not be held liable under Title VII because it satisfied both prongs of the *Faragher/Ellerth* affirmative defense.

For the reasons articulated above, Defendants respectfully request that their Motion for Summary Judgment be granted, that Plaintiff's claims against them be dismissed with prejudice, and for such other and further relief as the Court deems appropriate.

    Respectfully submitted,

    ARMORED MOTOR SERVICES OF AMERICA, INC.,

    By its attorneys,


    /s/ Allison Romantz
    Laurence Donoghue (BBO# 130140)
    Allison K. Romantz (BBO#554909)
    MORGAN, BROWN & JOY LLP
    200 State Street
    Boston, MA 02109
    (617) 523-6666

## RULE 7.1(A)(2) CERTIFICATION

I hereby certify that pursuant to Local Rule 7.1(A)(2) that on February 3, 2006, I have conferred with counsel for the plaintiff, William McLeod, Esq., McLeod Law Office, 77 Franklin Street, Boston, MA 02108on, MA 02135 to attempt in good faith to resolve or narrow the issues contained in this motion, but have been unsuccessful in doing so.

    /s/ Allison Romantz
    Allison K. Romantz

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 10, 2006.

    /s/ Allison K. Romantz
    Allison K. Romantz