# Exhibit G

17:34 - 33

Jim w/ Gov. In Diner

#16
#15     4 Hours Aprox — WAST

17:33:49  Came Here to office

17:40:37
Left office

17:34:02 → In office

left on to
West St
(across Sturdy Rd.)
4th

right on North
Ave —
across Hayward field

17:50

17:54

Veenstra, Jeanne (BRI)

| | |
|---|---|
| To: | Abreu, Christopher (BRI) |
| Subject: | RE: Ciambriello rape screening |

thanks chris....I'll check it out. jeanne

-----Original Message-----
| From: | Abreu, Christopher (BRI) |
|---|---|
| Sent: | Monday, June 17, 2002 1:36 PM |
| To: | Veenstra, Jeanne (BRI) |
| Subject: | FW: Ciambriello rape screening |

Ms. Veenstra, Check out the Attleboro file, I think I had written a memo. about my visit. Let me know. I also know that the facility still has tapes of the incident. Like I said, it will take some time though to go through them.

-----Original Message-----
| From: | Markey, Christopher (BRI) |
|---|---|
| Sent: | Monday, June 17, 2002 12:39 PM |
| To: | Abreu, Christopher (BRI); Saunders, Christopher (BRI) |
| Subject: | FW: Ciambriello rape screening |

This is the one - - please see if you two can get together and help out Ms. veenstra

-----Original Message-----
| From: | Veenstra, Jeanne (BRI) |
|---|---|
| Sent: | Thursday, June 13, 2002 12:37 PM |
| To: | Markey, Christopher (BRI) |
| Subject: | Ciambriello rape screening |

Hi Chris .- SOOOO SORRY TO BOTHER YOU ........ but no choice.....this is the alleged adult workplace rape at the armored car facility. There were apparently some in house surveillance cameras which caught some activity of V & D. I am trying to locate the tapes and Det. Otrando said he forwarded them to you. I know we never had them with our district court file because C. Abreu actullay went to the facility to view them with defense counsel. Otrando is adamant that you had them. I know you have cleared out of here and given me a number of other tapes for other cases and this is not one of them. Can you just let me know what you recall. (I also note that your screening file had a copy of a GJ summons to the facility requiring the production of those tapes to the GJ for mid last summer - ....ring any bells...any ideas ?? SORRRRY AGAIN> Jeanne

CTS thought there was a tape
Check ATDC file/office

1

# Exhibit H

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS SUPERIOR COURT
BRISTOL, ss.
FILED

SEP 1 9 2003

MARC J. SANTOS, ESQ.
CLERK/MAGISTRATE

SUPERIOR COURT
BRCR2002-0773(1-2)

COMMONWEALTH

v.

FRANCESCO CIAMBRIELLO

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER ON MOTION TO DISMISS

### INTRODUCTION

Defendant Francesco Ciambriello ("Ciambriello") moves to dismiss these indictments for indecent assault and battery and rape because the Commonwealth has lost three of six surveillance tapes from the facility where the events occurred. Ciambriello says that the interactions between himself and the complaining witness were consensual and that the lost tapes would provide crucial exculpatory evidence. After an evidentiary hearing, the court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

Heather Kiernan alleges that Ciambriello sexually assaulted and raped her on the night of May 19, 2001, while they were working at Armored Motor Car Services of America ("AMSA"). Ciambriello was Kiernan's supervisor.

AMSA is a money-processing depository facility. It has security cameras throughout the facility and outside of the building. The only place inside the facility where there are no video cameras is the supervisor's office. Ms. Kiernan says that the assault occurred in this office.

The images from the security cameras are displayed on VCR-type monitors in a small room by the manager's office. This is a multiplex display, with each screen displaying nine frames. The result is that there are multiple images from many cameras on the same video tape. The tape machine is set to cover a specific amount of time – 8, 12, 24, 48 hours – and then the images will be recorded at intervals that result in a two hour tape being filled at the end of that time period. The AMSA machines were set to cover at least an eight hour shift. This means that there is not true continuous coverage but, more importantly for this case, it means that each of the six video tapes cover the same period of time, albeit recording from different cameras. There is also an audio recording.

In the early morning hours of May 20, 2001, Sergeant John Otrondo, of the Attleboro Police Department went to AMSA. He looked at the surveillance tapes in the small room next to the manager's office. He saw three scenes: Kiernan and Ciambriello and another woman standing outside the facility smoking; Kiernan at her desk with Ciambriello speaking to her; and Ciambriello walking with Kiernan down a corridor (looking from the back and from their left sides), with his arm around her, going towards the "money room" at the back, and entering the supervisor's office. In none of these scenes could Otrondo see facial expressions nor hear what the people were saying. Otrondo reported that Edward O'Brien, one of the employees of AMSA, later heard Kiernan say on the audio tape, "No. No. I don't want to go back there."

As they reached the supervisor's office, Otrondo could see the door open. About five minutes passed. Kiernan came out, turned left to go towards the ladies room. Otrondo could see the front of Kiernan, but could not see any facial expressions not make any observations about her demeanor.

2

Otrondo seized three of the six video tapes. The tapes were marked in black marking pen with capital letters with circles around the letters. Otrondo seized tapes D, E, and F. He dropped off the tapes with ADA Christopher Markey. Markey asked him to get the other tapes. Otrondo seized tapes A, B, and C. He still has custody of tapes A, B, and C. He does not have tapes D, E, and F.

ADA Markey went to the Attleboro Police Department to get the tapes so defense counsel David Ardito ("Ardito") could review the tapes. They were unable to play the tapes on the DA's equipment. Markey arranged for Ardito to go to AMSA to review the tapes. He left the tapes in the District Attorney's office in the Attleboro District Court for former Assistant District Attorney Christopher Saunders who was going to do the probable cause hearing. This is the last time that Markey saw the tapes. Saunders does not know where the tapes are.

Former Assistant District Attorney Christopher Abreu ("Abreu") was asked to assist ADA Saunders. Abreu made arrangements to take the tapes to AMSA so that Ardito could view them. Abreu and Ardito met O'Brien at AMSA; they went into the viewing room. Abreu viewed part of the tapes. He heard the woman on the tape say "I don't want to go back there." He saw that the man had a firearm tucked in his belt, in back on the left side. The woman was on the right side. He could not see facial expressions nor any obvious signs of demeanor. He saw the two enter a room; he could not see inside the room. The door opened about five minutes later. The woman left; the man left sometime after. He could see no obvious facial expressions or signs of demeanor. He does not recall seeing on the tape anyone else in the facility.[1] He does not

---

[1] Apparently, Ms. Kiernan testified that she called a woman co-worker friend after the events in question, that the friend came to AMSA, and that the friend came into the facility. If no one saw this woman on any tape, this might affect Ms. Kiernan's credibility. First, if the woman

recall if he left with the tapes. He believes he would have. He has no specific memory about what happened to the tapes.

Police Officer Russell Castro of Attleboro also viewed the tapes. He saw, and did not see, essentially what the other people who viewed the tapes saw, and did not see. That is to say, he like the others did not see any facial expressions not see any noteworthy demeanor. He could not hear any words. He was asked by Officer Otrondo to take tapes A, B, and C to the Raynham Police Department to Deputy Chief Pacheco. Pacheco was able to retrieve images from the tapes and made a video tape of the images of Kiernan and Ciambriello. The court reviewed this tape; it appeared to have on it the same scenes that the various witnesses testified that they saw when they viewed the various tapes, including those who viewed lost tapes D, E, and F.

## CONCLUSIONS OF LAW

Where potentially exculpatory evidence is lost or destroyed, the court employs a balancing test to determine the appropriateness and extent of remedial action. Commonwealth v. Olszewski, 401 Mass. 749, 755 (1988) ("Olszewski I"). The defendant bears the initial burden of proving that the evidence in question is potentially exculpatory. Commonwealth v. White, 47 Mass.App.Ct. 430, 433 (1999). If the defendant meets that burden, the court weighs (1) the culpability of the Commonwealth; (2) the materiality of the lost evidence; and (3) the potential risk of prejudice to the defendant in order to determine an appropriate remedy. Id.; Commonwealth v. Charles, 397 Mass. 1, 13 (1986). Because there is a significant public interest in "bringing guilty persons to justice," dismissal of an indictment is warranted only where the

---

was not there, it might indicate that Ms. Kiernan is an inaccurate reporter of events and bolster the consent defense. If the woman was there, she had an ally. Since Kiernan did not leave with her friend, that might bolster the consent defense.

4

Commonwealth's conduct is "egregious." Commonwealth v. Olszewski, 416 Mass. 707, 717 (1993) ("Olszewski II"); see also Commonwealth v. Perito, 417 Mass. 674, 681 (1994) (calling dismissal of an indictment a "drastic remedy.")

In this case, the defendant has demonstrated that the lost evidence is potentially exculpatory. Evidence is "potentially exculpatory" if there is a "reasonable possibility," based on "concrete evidence rather than a fertile imagination, that access to the material would have produced evidence favorable to his cause." Commonwealth v. Willie, 400 Mass. 427, 433 (1987); Commonwealth v. Neal, 392 Mass. 1, 12 (1984). The information on the lost tapes includes the amount of time the defendant and Kiernan were alone together in the supervisor's office; approximately five minutes.[2] A jury watching these tapes could question whether that time was sufficient for the alleged assault to occur. The lost tapes also raise important questions about Kiernan's credibility. While Kiernan claims that a friend visited her inside the building after the assault occurred, the friend is not present on any of the recordings. Because the defense in this case is consent of the victim, evidence that tends to damage Kiernan's credibility could benefit the defendant.

Nonetheless, in balancing the culpability of the Commonwealth, the materiality of the lost evidence, and the risk of prejudice to the defendant,[3] a dismissal of the indictment is not warranted in this case. While the Commonwealth's conduct was far from ideal, Massachusetts courts have consistently held that the negligent loss or destruction of evidence is not sufficient to

---

[2]This information is also on the remaining tapes.

[3]There is also prejudice to the Commonwealth. The statement of the victim, "I don't want to go back there," appears to be only on one of the lost tapes.

5

warrant the dismissal of an indictment. For example, in <u>Commonwealth v. Olszewski</u>, the Supreme Judicial Court held that the accidental destruction of a witness's exculpatory statement and the loss of evidence found at a murder scene was "certainly improper," but not "sufficiently egregious to warrant dismissal of the indictment" against the defendant. 417 Mass. 707 at 537. Similarly, the loss of the tapes in this case is unfortunate, but the defendant does not suggest, nor is there any indication, that the Commonwealth acted intentionally or in bad faith. Defendant's Brief at 2. Accordingly, the Commonwealth's conduct is not "sufficiently egregious" to warrant dismissal of the indictment. <u>Id.</u>; see also <u>Commonwealth v. Martinez</u>, 420 Mass. 622, 628 (1995) (declining motion for a new trial where police lost wallet with potentially exculpatory evidence in part because there was "no showing that the police were more than negligent"); <u>Commonwealth v. Waters</u>, 420 Mass. 276, 279 (1995) (upholding trial judge's refusal to dismiss indictments where "the police had been at most negligent" in destroying tape recordings of radio dispatch calls). Cf. <u>Commonwealth v. Sasville</u>, 35 Mass.App.Ct. 15, 24 (1993) (dismissing indictment where Commonwealth authorized the destruction an aborted fetus after teenager reported being raped upon discovering she was pregnant, and calling Commonwealth's conduct "gross negligence" and "perilously close to supporting an inference of bad faith").

The court must next consider the materiality of the lost evidence. Evidence is material if, "in considering the entire record, it creates a reasonable doubt as to the defendant's guilt that would not otherwise have existed." <u>Commonwealth v. Rodriguez</u>, 50 Mass.App.Ct. 405, 406 (2000). While it is true that the lost tapes contain evidence that may be favorable to the defendant, the tapes were also viewed by a number of potential witnesses – including defense counsel – before they were lost. Each of these witnesses may testify before the jury. In addition,

6

all six tapes cover the same period of time, albeit from different angles, and none of the

videotapes – lost or otherwise – depicts the facial expressions or demeanor of Kiernan or the

defendant. Accordingly, the lost tapes do not create a "reasonable doubt as to the defendant's

guilt *that would not otherwise have existed.*" Rodriguez, 50 Mass.App.Ct. 405 at 406 (emphasis

added); see also Commonwealth v. Shipps, 399 Mass. 820, 836 (1987) citing United States v.

Agurs, 427 U.S. 97, 109-110 (1976) ("The mere possibility that an item of undisclosed

information might have helped the defense, or might have affected the outcome of the trial, does

not establish 'materiality' in the constitutional sense").

Finally, the prejudice to the defendant is marginal. The jury will not be deprived of any

potentially exculpatory evidence because the information on the lost tapes is known and there are

several witnesses available testify as to their contents. Commonwealth v. Hunter, 426 Mass

715, 719 (1998); Olszewski II, 416 Mass. 707 at 17. Furthermore, Kiernan is expected to testify

at trial, and the defendant may impeach her credibility at that time. Any prejudice to the

defendant is "too unsubstantial and uncertain" to warrant a dismissal of the indictment. Charles,

397 Mass. 1 at 14; see also Commonwealth v. Fielder, 23 Mass.App.Ct. 506, 516 (1987)

(prejudice caused by Commonwealth's loss of tape recording of witness identifying defendant

"not substantial enough" to justify remand).

ORDER

For the reasons stated in this opinion, the court DENIES the motion to dismiss. The

court will leave to the trial judge any appropriate remedy for mitigating any prejudice that the

defendant may have suffered because of the loss of the three videos. The judge may consider an

appropriate instruction to the jury about the lost tapes; may allow testimony about the lost tapes;

7

may limit cross examination of witnesses who viewed the tapes about not seeing another woman

in the facility; or whatever other cure that judge may find appropriate.

Nonnie S. Burnes
Associate Justice

Date:  September 16 2003

8

# Exhibit I

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HEATHER KIERNAN,

　　　　　Plaintiff,

-v-　　　　　　　　　　　　　　　　　　CIVIL NO.  04-10131 RBC

ARMORED MOTOR SERVICE OF
AMERICA, INC., and
FRANCESCO CIAMBRIELLO

　　　　　Defendants.

## **AFFIDAVIT OF GARY W. ORLACCHIO**

Now comes Gary W. Orlacchio, being warned of the penalties and pains
of perjury, who hereby deposes and says:

1.　　I am over the age of 18, and understand the meaning and
obligation of an oath.  All facts herein stated are based on my
personal knowledge, unless otherwise expressly stated.

2.　　I am a partner in the law firm of Shalhoub & Orlacchio. Our law firm
handled the   workers compensation claim of Heather Kiernan
against Armored Motor Service of America, Inc. (hereinafter
AMSA).

3.　　The Employer's First Report of Injury was prepared on May 23,
2001 by Linda Rush, an Assistant Personnel Director for AMSA.

4.　　On June 5, 2001, AMSA's representatives filed an "Insurer's
Notification of Denial" which stated, among other things "No
medical evidence to establish an injury out of the course of
employment."

5.　　In a Notice dated July 17, 2001, the Department of Industrial
Accidents issued notice for a Conciliation claim to be held on

August 15, 2001.  At that time, AMSA's insurer was represented by counsel.

6.  On December 17, 2001, a proceeding  was scheduled for January 23, 2002 at the Department of Industrial Accidents in Fall River.

7.  Up to the time of the conference in January of 2002, AMSA' position on liability remain unchanged.  When the case resolved in January of 2002, it did so without any acceptance of liability.

Signed under penalty of perjury, this _10th_ day of February, 2006.

_____

Gary W. Orlacchio, Esq.

# Exhibit J

MORGAN, BROWN & JOY, LLP
ATTORNEYS AT LAW
ONE BOSTON PLACE
BOSTON, MASSACHUSETTS 02108-4472

TELEPHONE
(617) 523-6666
FACSIMILE
(617) 367-3125

ALLISON K. ROMANTZ
aromantz@morganbrown.com

February 27, 2003

BY TELECOPIER AND FIRST
CLASS MAIL

David R. Ardito, Esq.
228 County Road
Attleboro, MA 02703

Re:    *Commonwealth of Massachusetts v. Francesco Ciambriello*
       MCAD Docket No. 01BEM10706

Dear Attorney Ardito:

I am writing as a follow up to our telephone conversation of earlier this week as well as your recent telephone call to Kathy Dowler at AMSA seeking to obtain a copy of the video tape from the AMSA facility on the date of the alleged sexual assault of Heather Kiernan.

As I previously indicated to you, AMSA provided all of the tapes from its security system on the date in question to the Attleboro police. Enclosed herewith is a copy of the receipt statement from Detective John Orlando from the Attleboro police acknowledging his receipt of the tapes.

While I am uncertain as to why the district attorney is representing to you that the Commonwealth is not in possession of the tapes, this receipt shows that the police have been in possession of the tapes since August 17, 2001.

Please call if you have any questions.

Very truly yours,

Allison K. Romantz

enclosure
cc: D. Gates
    J. Lloyd Brigg, Esq.
    R. Joy, Esq.

02/25/2003  17:00  AMSA PERSONNEL  15??3673169
02/25/2003  17:52   5888698236   AMSA   PAGE  02/02

THIS LETTER IS JUST TO

CONFIRM THAT DETECTIVE

OTRANDO HAS TAPES D, E, AND F

FROM 5-19-01 AND HE HAS

REQUESTED TAPES A, B, AND C FOR

THAT DAY AS WELL.

DETECTIVE OTRANDO IS NOW IN

POSSESSION OF ALL 6 VIDEO TAPES

FROM 5-19-01 A-F #2's

DETECTIVE John A Otrando    8/17/01

BRINKS ARMORED

DATE

# Exhibit K



(508) 431-2222
FAX (508) 431-2211

BISIO & DUPONT BUILDING
228 COUNTY STREET
ATTLEBORO, MASSACHUSETTS
02703-3534

THE LAW OFFICE OF

*David R. Ardito*

## FACSIMILE TRANSMITTAL COVER SHEET

**Date:** March 4, 2003

**To:** Jeannie Veenstra

**From:** Office of David R. Ardito

**Fax Number:** 508-999-2997

**Number of pages (including this cover):** 3

In Re: Commonwealth v. Francesco Ciambriello
    Docket No: BRCR2002-0773 (1-2)

Dear Ms. Veenstra:

According to the records available, it appears as though the Attleboro Police Department has the video that we have been looking for. Please look into this at your next convenience.

Thank you for your kind attention and anticipated assistance in this matter.

Very truly yours,

David R. Ardito

*call. John Orlando*
*need letter*
*re: tape*

This transmittal is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this transmission is not the intended recipient, or the employee or agent responsible for delivering the transmittal to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone.

# Exhibit L

(508) 431-2222
FAX (508) 431-2211

BISIO & DUPONT BUILDING
228 COUNTY STREET
ATTLEBORO, MASSACHUSETTS
02703-3534

THE LAW OFFICE OF

*David R. Ardito*

March 20, 2003

Allison Romantz, Esq.
Morgan, Brown & Joy, LLP
One Boston Place
Boston, MA 02108-4472

**In Re: Commonwealth v. Francesco Ciambriello**
         **MCAD Docket No: 01BEM 10706**
         **Docket No: BRCR-2002-0773**

Dear Ms. Romantz:

Enclosed herewith please find a copy of the correspondence received by Assistant
District Attorney, Jeanne M. Veenstra, relative to the video tape(s) that we have been
attempting to obtain regarding the above-referenced matter. Apparently, the tape that was
provided to the Attleboro Police Department has turned up missing. Therefore, I ask if
you would kindly advise your client to provide this office with another copy of the tape
per the court order previously obtained.

Thank you for your kind attention and anticipated assistance in this matter.

Very truly yours,

David R. Ardito, Esq.

DRA/ld
Enclosures

cc: Jeanne M. Veenstra, Assistant District Attorney (without enclosures)

# Exhibit M



*3-18-03*

*The Commonwealth of Massachusetts*

OFFICE OF THE

*attached copy*

DISTRICT ATTORNEY

*of Otrando*

BRISTOL DISTRICT

*supplemental)*

PAUL F. WALSH, JR.
DISTRICT ATTORNEY

888 PURCHASE STREET
P.O. BOX 973
NEW BEDFORD, MA 02741
(508) 997-0711

March 18, 2003.

Attorney David Ardito
Bisio & Dupont Building
228 County Street
Attleboro, MA  02703

RE:    COM. V. FRANCESCO CIAMBRIELLO,  IND #: BRCR-2002-0773(1-)

Dear Attorney Ardito:

I am in receipt of your correspondence dated March 4, 2003.  As you know from prior conversations regarding the videotape, I have spoken to Detective Otrando. He acknowledged receiving copies of tapes from AMSA.  As you also know, that tapes were unable to be viewed on standard equipment and arrangements were made to view the tapes at the AMSA facility.  Detective Otrando provided the tapes to Christopher Markey and on a particular date yourself and former assistant district attorney Christopher Abreu went to AMSA and viewed the tape.  Detective Otrando was not present.  As I had previously informed you, former assistant district attorney Abreu has indicated that he did not take any tapes when he left AMSA.  You indicated that you didn't see him leave with any tapes.  You indicated that you didn't take the tapes from AMSA.  Obviously, I was not there and cannot explain where the tapes are.  It is possible that they were left at the AMSA facility.  I am not sure what else could have happened.

In any event, please know that I have again spoken to Detective Otrando and he has again stated that he is not in possession of the tapes.  I have confirmed that my office is not in possession of the tapes.  The copies provided to Detective Otrando unfortunately appear to have been lost.  I understand that AMSA's position having already provided copies.  The only option is that they provide other copies.  Given the Court Order to produce the items, if they cannot provide another copy, I believe they may need to indicate that to the Court and explain why another copy cannot be produced.

Please give me a call upon receipt so we may discuss this.  Thank you.

Sincerely,

Jeanne M. Veenstra
Assistant District Attorney
For the Bristol District

# Exhibit N

02/25/2003  10:16    5082231114                                    PAGE  03

AMSA ATTLEBORO



(508) 431-2222
FAX (508) 431-2211

THE LAW OFFICE OF

*David R. Ardito*

BISIO & DUPONT BUILDING
228 COUNTY STREET
ATTLEBORO, MASSACHUSETTS
02703-3534

February 20, 2003

Armored Motor Services of America
Attention: Jay Kory
41 Walton Street
Attleboro, MA 02703

**In Re: Commonwealth v. Francesco Ciambriello**

Dear Mr. Kory:

As you know, this office represents Mr. Francesco Ciambriello relative to the above-mentioned matter. Through counsel I have requested a copy of the video tape from the time that the alleged victim (Heather Kiernan) checked into the building to the time she checked out of the building on the date of the alleged incident.

I ask at this time that you kindly provide this office with same as soon as possible, as I am due into court on behalf of my client very soon.

Thank you for your kind attention to this matter. Please do not hesitate to contact this office with any questions or concerns that you may have relative to same.

Very truly yours,

David R. Ardito, Esq.

DRA/ld

A0003

# Exhibit O

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

HEATHER KIERNAN,

        Plaintiff,

    V

ARMORED MOTOR SERVICES OF
AMERICA, INC. and FRANCESCO
CIAMBRIELLO,
        Defendants.

Civil Action No: 04-10131-RBC

## AFFIDAVIT OF DAVID R. ARDITO

I, David R. Ardito, do hereby state that the following is true to the best of my knowledge, information and belief:

1.    My name is David R. Ardito and I am an attorney in good standing with the Bar Association.

2.    I have an office located in the Bates Building at 7 North Main Street, Suite 215A, in Attleboro, Massachusetts 02703.

3.    I am counsel of record for the Defendant, Francesco Ciambriello, in the above-captioned matter.

4.    There was a date in August of 2002 in which arrangements had been made for me to view the video in question at the office of Christopher Markey.

5.    Mr. Markey did not have the appropriate equipment in which to view the video; therefore, other arrangements had to be made.

6.    On December 4, 2002, I met Christopher Abreu outside of the AMSA building in Attleboro, Massachusetts.

7.    We were escorted to the appropriate equipment inside the AMSA building and Christopher Abreu and I viewed the video.

8.    When we were through viewing the video, I left the building without the videotape.

Signed under the pains and penalties of perjury on this 27th day of July 2005

_____
David R. Ardito

# Exhibit P

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HEATHER KIERNAN

        Plaintiff,

-v-                                                    CIVIL NO.  04-10131 RBC

ARMORED MOTOR SERVICE OF
AMERICA, INC., ET AL.

        Defendant.

## AFFIDAVIT OF JEANNE M. VEENSTRA

Now comes JEANNE M. VEENSTRA, being warned of the penalties and pains of perjury, does hereby depose and say:

1.    I am over the age of 18 and understand the meaning and obligation of an oath. The facts herein stated are based on my personal knowledge. I am an attorney and a former Assistant District Attorney for Bristol County.

2.    Attached hereto as Exhibit A is a true and complete copy of a letter dated March 18, 2003. I wrote the letter based on information that was available to me on that date. All facts in the letter of March 18, 2003 were true at the time the letter was written.

3.    The original of the letter was sent to the Addressee on the letter. A copy was retained.

4.    To the best of my knowledge, in November 2003, when the matter of Commonwealth v. Francesco Ciambriello went to trial, none of the facts in the letter of March 18, 2003 changed.

Signed under penalty of perjury this _4th_ day of January, 2006.

_Jeanne M. Veenstra_

Jeanne M. Veenstra

# Exhibit Q

COMMONWEALTH OF MASSACHUSETTS
Trial Court Department
Criminal Session

BRISTOL, ss.                                    NEW BEDFORD DIVISION

COMMONWEALTH          )
                      )          DOCKET NO: BRCR2002-0773(1-2)
        V.            )
                      )
FRANCESCO CIAMBRIELLO )
                      )

### AFFIDAVIT OF DAVID R. ARDITO

Now comes David R. Ardito, who hereby swears under the pains and penalties of perjury that the following statements are true and accurate to the best of my knowledge:

1.    My name is David R. Ardito and I am an attorney in good standing with the Massachusetts Bar Association, with an office located in the Bisio & Dupont Building at 228 County Street, Attleboro, Massachusetts 02703-3534.

2.    I am the attorney of record for the Defendant, Francesco Ciambriello, in the above-captioned matter.

3.    It has been brought to this attorney's attention that Heather Kiernan has filed a Civil Suit against "AMSA" (her employer).

4.    Due to that Civil Suit, Discovery has taken place and through that Discovery it was revealed that the Commonwealth had lost important and exculpatory evidence.

5.    The evidence lost consists of videotapes from a surveillance camera of the 8-hour work shift and both Ms. Kiernan and the Defendant were viewed during their work shift.

6.    On July 1, 2003, employees from "AMSA" were subpoenaed by the Commonwealth and a preliminary hearing took place, whereby those employees stated under oath that the videotapes were removed by the Commonwealth or its agents and were never returned.

Dated: July 30, 2003

Respectfully submitted,
David R. Ardito,

David R. Ardito, Esq.
Bisio & Dupont Building
228 County Street
Attleboro, MA 02703-3534
(508) 431-2222
BBO# 630025

## Certificate of Service

I, David R. Ardito, hereby certify that I have served a copy of the foregoing Affidavit of David R. Ardito upon the Assistant District Attorney handling the matter, by hand-delivering to Jeanne Veenstra of 888 Purchase Street, New Bedford, Massachusetts 02740 on this 31st day of July 2003.