# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEATHER KIERNAN,<br><br>Plaintiff,<br><br>v.<br><br>ARMORED MOTOR SERVICES OF AMERICA, INC. and FRANCISCO CIAMBRIELLO,<br><br>Defendants. | Civil Action No. 10131 |

## DECLARATION OF JASON KHOURY

JASON KHOURY, declares pursuant to 28 U.S.C. § 1746 under penalty of perjury that the following is true and correct:

1. I was formerly employed as the branch manager for Armored Motor Services of America's ("AMSA")Attleboro, Massachusetts vault and cash collection/distribution facility.

2. On Saturday, May 19, 2001, Francesco Ciambriello and Heather Kiernan were both scheduled to work at the Attleboro facility.

3. On May 19, 2001, the Attleboro facility had a security system in operation which had multiple cameras which were located throughout the facility and on the outside of the building which continuously recorded on tapes that looked much like the tape used by a standard video cassette recorder ("VCR") but was not a VCR tape. The cameras recorded onto six different tapes with each tape having multiple cameras feeding into it. The tapes could not be played

back on a regular VCR.

4. Each tape ran for 24 hours. Thus, every 24 hours, the six tapes needed to be removed from the video recorder and six new tapes needed to be inserted. AMSA retained the six videotapes from each 24 hour period for 90 days. After 90 days, if AMSA knew of no reason to preserve the video, the tapes would be reused and the video taped over.

5. The audio capabilities of the security system was limited. Not all of the cameras had audio abilities and for those that did, the audio was generally of very poor quality and was basically unintelligible.

6. The security cameras were stationary and would only record what was in its view frame. The cameras that were set to record the dispatch area only recorded a small portion of the dispatch area near where the two trap doors were where the money was unloaded from the trucks.

7. On the day after Ms. Kiernan reported to the Attleboro police that she had been sexually assaulted by Mr. Ciambriello at the facility while at work on May 19, 2001, I along with members of the Attleboro police department, reviewed the security videos from May 19, 2001.

8. It is my understanding that Ms. Kiernan alleges that Mr. Ciambriello first sexually assaulted her in the dispatch area and then sexually assaulted her again in my office.

9. Much of the time that Mr. Ciambriello and Ms. Kiernan were in the dispatch area, they were in an area out of the range of the camera and therefore the only times they appeared on the video when in the dispatch area was when

2

they walked in front of or stood in front of the camera. The security camera did not record any interaction between Mr. Ciambriello and Ms. Kiernan in the dispatch area when they were touching each other in any way.

10. There were no security cameras in the branch manager's office.

11. On May 20, 2001, the Attleboro police made a request to take three (3) of the six tapes into their custody as part of their investigation. Because this was a criminal investigation and AMSA wished to cooperate fully, AMSA agreed to allow the police to take these three tapes. AMSA did not make copies of these tapes before they turned them over to the police. AMSA believed that it was not necessary to make copies of the tapes before turning them over to the police because it believed that the tapes would be safer with the police than anywhere else.

12. After the police left on May 20, 2001, AMSA took steps to ensure that the remaining three videotapes from May 19, 2001 would be preserved.

13. In August, 2001, Detective Otrando from the Attleboro police returned to AMSA's facility and requested that AMSA turn over the remaining three (3) tapes from May 19, 2001 which AMSA had been safe keeping.

14. I gave Detective Otrando the remaining three tapes. I still believed at this time that the tapes would be kept safely in the custody of the police. I did have Detective Otrando sign a receipt indicating that he was taking the three remaining receipts and was now in possession of all six tapes from May 19, 2001.

15. Sometime much later, (I believe in 2002 although I am not certain of the date),

3

I was contacted by Ed O'Brien, AMSA's Director of Security, who advised me that an attorney from the District Attorney's Office and Mr. Ciambriello's criminal defense attorney would be coming to the Attleboro facility because they wanted to watch the videotapes and did not have access to the appropriate equipment which could play the tapes.

16. I was present when the attorneys came to the facility to view the tapes and I remained with them in the room while they viewed the tapes.

17. There was absolutely no discussion while the attorneys were present about leaving the tapes with AMSA so that AMSA could make copies of the tapes and I never agreed to have the tapes returned to AMSA so that copies could be made.

18. It is my understanding and belief that the attorney from the District Attorney's Office who had brought the tapes with him to the facility, took the tapes with him when he left the facility.

19. The tapes were not left at AMSA's facility.

20. At some point, when the District Attorney's Office could not locate three of the tapes, I was contacted to see if the tapes may have been accidentally left at AMSA. I personally did an extensive and thorough search of AMSA's facility and the tapes were not located in the facility.

21. I have no idea what happened to the tapes after they left the facility that day. The only thing I am sure of was that the tapes were not left, intentionally or unintentionally, at AMSA.

22. I understand that Plaintiff is suggesting that the tapes were perhaps

4

unintentionally left at AMSA by the attorney from the District Attorney's Office and that I thereafter found them and intentionally destroyed them to protect AMSA and/or Mr. Ciambriello. Such a suggestion is completely false. I would never do anything to impede a criminal investigation.

23. The process at AMSA was to cycle the tapes over a period of 90 days. If AMSA had any reason to pull particular tapes out of the cycle it would, but if it did not, the video was taped over 90 days later.

Signed under the pains and penalties of perjury this ___ day of March, 2006.

Jason Khoury

5