UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **HEATHER KIERNAN,**<br>    **Plaintiff,**<br><br>                 **v.**<br><br>**ARMORED MOTOR SERVICES OF AMERICA, INC. and FRANCISCO CIAMBRIELLO,**<br>    **Defendants.** | Civil Action No. 10131 |

### DEFENDANT ARMORED MOTOR SERVICES OF AMERICA, INC.'S REPLY MEMORANDUM OF LAW TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Defendant Armored Motor Services of America, Inc. ("AMSA") respectfully submits this reply to Plaintiff Heather Kiernan's ("Plaintiff" or "Kiernan") Opposition to AMSA's Motion for Summary Judgment ("Opposition"). AMSA is filing this Reply to dispute certain factual statements and attendant arguments set forth by Plaintiff in her Opposition.

**I.**     **Ciambriello Was Not Kiernan's Supervisor**

The record in this case is clear that notwithstanding Francisco Ciambriello's ("Ciambriello") title of "weekend supervisor," AMSA did not grant Ciambriello any supervisory authority over any other employee, including Kiernan. Indeed, Plaintiff admits in her Opposition that Ciambriello possessed none of the indicia of supervisory authority recognized by the court in *Noviello* as necessary for a determination of supervisory status; that is, he had no authority "to hire, fire, demote, promote, transfer, or discipline an employee." (*Opposition, at p.* 3). Nor has Plaintiff presented evidence that

Ciambriello had authority to "direct activities, assign and control the flow of work, evaluate an employee's work load, distribute necessary supplies and tools, give directions, verify and fix mistakes, assist employees in assigning tasks and monitor and evaluate work performance;" all of which are additional tasks recognized as indicia of supervisory authority by the Massachusetts Commission Against Discrimination in its *Sexual Harassment in the Workplace Guideline*, §IIIB (2002).  Instead, in her effort to show supervisory status, Kiernan relies exclusively on two factors: 1) that Ciambriello controlled access into and out of the building on the weekend; and 2) that according to deposition testimony provided by branch manager, Jason Khoury ("Khoury"), Kiernan "answered to Ciambriello" on the weekend. *Opposition, at pp. 3-4*.  Neither of those factors, without more, is sufficient to support a finding of supervisory status for Ciambriello.

Plaintiff's argument that Ciambriello's "control" of the building makes him a supervisor is unsound and unsupported in case law.  As the vault supervisor, Ciambriello was responsible for the safekeeping of the millions of dollars stored in the facility.  To protect the money and the safety of its employees, AMSA had strict security protocols in place.  On the weekend, Ciambriello was responsible for ensuring that those protocols were followed.  That responsibility included controlling the entry into and exit from the building.  However, that control does not convert Ciambriello to a supervisor any more than a security guard in a downtown Boston office building could be considered the supervisor of all of the building's tenants.  Furthermore, Plaintiff has not cited any case law in which a court has found that the assignment of security duties makes an individual a supervisor for purposes of vicarious liability under Title VII or Chapter 151B.

The second basis relied upon by Kiernan in support of her argument of Ciambriello's supervisory status is no more compelling. Although Branch Manager Khoury did state at his deposition that Kiernan "answered" to Ciambriello on the weekend, he was not asked, nor did he provide any elaboration as to what he meant by that testimony. However, because he also testified unequivocally at his deposition and in the declaration that he signed in support of AMSA's motion for summary judgment that Ciambriello had none of the specific authority and powers that the courts and the MCAD have found are required to find supervisory status *(see AMSA's Statement of Undisputed Material Facts, at ¶¶8-11)*, it is evident that what Khoury meant when he stated that Kiernan "answered" to Ciambriello was nothing more than the undisputed and non material fact that Ciambriello was responsible for vault and building security on the weekend and therefore everyone who entered and exited the building needed to do so with Ciambriello's permission.

## II.     Ciambriello's Harassment Was Not Furthered by Any Apparent Authority

Recognizing that there is no evidence in the record to support a finding that Ciambriello was imbued with **actual** supervisory authority, Plaintiff cites *Newell v. Celadon Security Services, Inc.*, 2006 U.S. Dist. LEXIS 3413 (D. Mass. 2006) to argue that liability should nevertheless be imposed upon AMSA for Ciambriello's conduct under the doctrine of apparent authority[1]. While the Court in *Newell* did recognize that vicarious liability under Title VII and Chapter 151B could be imposed with a finding of apparent authority, the Court also found that the factual record in *Newell* did not support

---

[1] "In the usual case, a supervisor's harassment involves misuse of actual power, not the false impression of its existence. . . . If, in the unusual case, it is alleged there is a false impression that the actor was a supervisor, when he in fact was not, the victim's mistaken conclusion must be a reasonable one." *Id.* at 759.

3

the plaintiff's claim of apparent authority because the alleged harasser in that case did nothing to hold himself out to the plaintiff as a supervisor. Thus, the court concluded that the plaintiff's mistaken belief that the harasser was a supervisor was *insufficient* to impose vicarious liability on the employer. The factual record in this case similarly does not support a finding of apparent authority. There is no evidence in the record that Ciambriello did anything to hold himself out to Kiernan as an individual who had the authority to hire, fire, discipline, evaluate her performance, assign her work or otherwise assert any authority over the terms and conditions of her employment.

Plaintiff argues that because AMSA required Ciambriello to carry a firearm as part of his job, controlled who could enter and exit the building and held the title of vault supervisor, it was reasonable for her (and would be reasonable for a jury) to believe that he was imbued with supervisory status and authority. In support of this argument, Plaintiff cites two cases: *Commonwealth v. Caracciola,* 409 Mass. 648 (1991) and *Commonwealth v. Chavis*, 415 Mass. 703 (1993), asserting that these two cases provide that it is a sign of authority if an individual carries a firearm. However, neither of these cases stands for the proposition that an employee becomes a supervisor simply because he carries a weapon as part of his job[2]. Moreover, as *Newell* makes clear, even if Plaintiff believed that Ciambriello was her supervisor because of the gun, his control over entry

---

[2] Neither of these cases involved the question of supervisory status under Title VII or Chapter 151B. *Commonwealth v. Caracciola* addressed the issue of whether there was sufficient evidence in a rape case to satisfy the statutory requirement that the defendant used force against the will of the alleged victim. In that case, the SJC ruled that the totality of the evidence presented by the Commonwealth, which included: 1) defendant wore a gun; 2) ordered the victim into his car; 3) gave the victim a false name; 4) claimed to be a police officer and 5) told the victim that she would be imprisoned if she did not obey him, was sufficient evidence of force. Similarly, in *Commonwealth v. Chavis*, the SJC never held that the carrying of a firearm imbued the person carrying the weapon with apparent authority. Rather, in summarizing evidence presented at trial, the SJC simply noted that the defendant was concerned that the individual seeking to purchase illicit drugs from him was an undercover police officer and sought to search that individual. The SJC went on in its factual recitation to note that after the search, "defendant satisfied himself that [the customer] did not carry a gun, wear a badge, or display any other sign of authority." *Id.* at 703.

into the building and his job title, Plaintiff's mistaken belief is insufficient where Ciambriello "did nothing to assert any authority over the terms and conditions of [her] employment." *Id.*

### III.     AMSA Satisfied its Obligation to Take Prompt Effective Remedial Action

Under both Title VII and Chapter 151B, when the alleged harassment is committed by a co-worker, an employer may escape liability unless the plaintiff can show that the employer "knew or should have known of the conduct and failed to take proper remedial action." In her Opposition, Plaintiff does not challenge AMSA's assertion that it neither knew nor had reason to know of Ciambriello's harassment of Plaintiff. However, she challenges AMSA's assertion that by terminating Ciambriello's employment, it satisfied its obligation to take effective remedial action. *Opposition at pp. 12-14.* Plaintiff argues that because Ciambriello was terminated not for the alleged harassment but because he violated AMSA policy by leaving the vault unlocked and unattended on May 19, 2001 when he exited the building to smoke a cigarette with Plaintiff in the parking lot, AMSA did not effectively remediate. That argument is nonsensical. An employer's obligation is to ensure that it takes steps to end the harassment. *Saad v. Stanley Street Treatment and Resources, Inc.*, 1994 WL 846911(D. Mass. 1994)(the chief measure of the adequacy of an employer's response is not the victim's own personal sense of justice, but rather, particularly where there is no prior history of workplace harassment, whether the behavior that gave rise to the complaint has ceased and does not threaten to reoccur); *see also, Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)(remedy should be reasonably calculated to end the harassment).

In *Newell v. Celadon Security Services, Inc.*, 2006 U.S. Dist. LEXIS 3414, the

5

court was faced with a similar scenario.  In that case, after the plaintiff reported that she had been sexually assaulted by a fellow employee, the alleged harasser voluntarily resigned his employment before the employer could begin to investigate the complaint.  The *Newell* Court ruled that the employer's response was "appropriate" regardless of the fact that the alleged harasser resigned rather than was terminated from his employment.  The court stated that *all that is required* is a response "that is reasonably calculated to prevent further harassment" and in that case, because the alleged harasser did not return to work, the harassment unquestionably ended.  *Id.* at *28-29.   The same is true in this case.  AMSA never had to make a decision as to whether Plaintiff's allegations were sufficient to warrant terminating Ciambriello's employment.  It simply had to take some action to ensure that any alleged harassment would not reoccur.  By terminating Ciambriello's employment, AMSA eliminated any possibility that Ciambriello would continue to harass Plaintiff or indeed harass any female employee.  Accordingly, there can be no question that AMSA fully satisfied its obligation to take prompt and effective remedial action.

**IV.     Plaintiff Misstates AMSA's Burden on Faragher/Ellerth Affirmative Defense**

In Section 2 of the argument section of her Opposition, Plaintiff asserts that AMSA argued that it was protected by the *Faragher/Ellerth* affirmative defense because it had a policy against sexual harassment, which included a complaint mechanism and because AMSA immediately removed Ciambriello from the workplace.  *See Opposition, at p. 8.*  Plaintiff misstates AMSA's argument as AMSA actually argued that the second part of the affirmative defense is met  when the employee, in this case Kiernan, unreasonably fails to take advantage of any preventative or corrective opportunities

6

provided by AMSA.  *See AMSA's Memorandum of Law in Support of Summary Judgment, at p. 8.*

There can be no question that AMSA did take reasonable precautions to prevent and correct promptly any sexually harassing behavior by its employees.  AMSA had a policy against sexual harassment that included a procedure that reporting harassment, which was distributed to all employees, including Kiernan. *(Facts, at ¶ 21)*.  That AMSA took its obligation seriously is evidenced by Plaintiff's own admission in her Opposition that when Branch Manager Jason Khoury was concerned about sexually inappropriate talk by Plaintiff's office mate, he investigated by speaking with Plaintiff who told him that she was not offended by the language of her office mate. *(Opposition, at p. 11)*.

In her Opposition, Plaintiff does not challenge and therefore concedes that AMSA has satisfied the second prong of the affirmative defense -- that being that Kiernan unreasonably failed to take advantage of any preventative or corrective opportunities provided by AMSA.  And indeed, that is the case as Plaintiff acknowledged in her deposition that she did not report an earlier incident where Mr. Ciambriello unbuttoned his pants in her office although she found his conduct sexually offensive and inappropriate. *(Facts, at ¶ 23 and 25)*.

For the reasons articulated above as well as those set forth in its initial memorandum of law in support of summary judgment, AMSA respectfully request that its Motion for Summary Judgment be granted.

    Respectfully submitted,

    ARMORED MOTOR SERVICES OF
    AMERICA, INC.,

    By its attorneys,

7

>/s/ Allison Romantz
>Laurence Donoghue (BBO# 130140)
>Allison K. Romantz (BBO#554909)
>MORGAN, BROWN & JOY LLP
>200 State Street
>Boston, MA 02109
>(617) 523-6666

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 14, 2006.

>/s/ Allison K. Romantz
>Allison K. Romantz