# Exhibit V

Claim Number:      977 29072 C

Claimant:          Heather Kiernan

Insured:           Armored Motor Services of America

Date of Loss: 5/19/01

June 1, 2001
Called and spoke to William Callahan, Security Manager of the Insured at the direction of Director Ed O'Brien. Mr. Callahan stated that he was the individual who viewed video along with Detective John Otrundo, Attleboro PD. Callahan stated that the video shows the clmt being lead down the hallway by Francisco (Tony) Ciambriello. Callahan said that Ciambriello was walking approximately ½ step behind and to the side of Kiernan. He stated that it appeared as though Kiernan was being escorted down the hallway. Neither person's face was visible to the camera as they were walking away from view. Ciambriello then directed Kiernan into the Manager's office and shortly after the door was closed. This office can not be viewed by the company's surveillance camera.

Approximately 15 minutes went by before both were seen leaving the office. They exited together and both went left into the hall. Kiernan went into the ladies room and Ciambriello walked toward the soda machine. I asked Callahan if Kiernan's clothes appeared disheveled or torn. He stated that all appeared fine but due to the distance they were from the camera it was hard to tell. Callahan did state that she did not appear upset or to be crying.

Callahan then said that a short time later Kiernan came out of the ladies room and appeared to use the phone. As short time later Christina Parrott, another employee arrived at the door and was met by Kiernan. They both then entered the building and Kiernan and Ciambriello continued to work, counting and verifying numbers.

At approximately 8:00 PM all parties were seen to leave the building together. The to women leaving into their own vehicles and Ciambriello in his. Callahan did say that he later learned that both women traveled to another employees home in Johnston, RI after leaving work that night. The employees name is Michael Pachetta and he is a driver for the insured.

Callahan informed me that the Attleboro Police had the only copy of the video and would not release it, as it was evidence in a criminal prosecution. He did state that if at a later time, he was able to view the tape or copy it he would also provide a copy for this investigation.

June 4, 2001
At the insured I met with Jason Khoury, Branch Manager for this facility. I informed him that I wished to speak with both Christina Parrott and Michael Paschetta. Khoury agreed to allow me to interview both but informed me that Paschetta had been hospitalized over the weekend and would not be available for some time. He did state that Parrott was present and he would bring her to his office to be interviewed. Khoury did provide me with the following information about the building. There are high security measures at each doorway where entrance can only be gained using various measures, which include keys, matching palm prints and codes. Entry/Exit through each door is not possible without utilizing one of these measures. From these observations a person would be prohibited from leaving abruptly, even an authorized person. If the claimant were to attempt to fight off her assailant and flee to safety, she would be hampered from doing so because of this security. I should also be noted that anyone that handles money, drivers and dispatch, including Ciambriello, are armed with handguns. The claimant is not.

I now interviewed Christina Parrott who allowed me to record our meeting. Ms Parrott stated that she has been a friend of the claimant since they were children and it was Kiernan who told Parrott about the insured and to try to obtain employment there. Parrott stated that she has been with the insured for only three weeks and works Monday through Fridays from 2Pm t0 8PM. She stated she works similar hours as Kiernan but she does not work Saturday's and Kiernan does. They do not work in the dame department and Kiernan's job is in data entry and pays slightly more. She stated that on Saturday, May 19th she and Kiernan had made previous arrangements to travel to the home of Mike Paschetta after Kiernan finished worked. Parrott stated that they had visited Paschetta at least on two other occasions. Paschetta is approximately 23 years old is single and lives with his mother in Johnston, RI, which is a short distance from the insured. Parrott stated that earlier in the evening, approximately 4:30pm she went to the insured to visit Kiernan. They stood outside and had a cigarette. She stated that Kiernan was in a good mood and appeared fine at that time. She stated that Kieran was dressed in a pair of jeans and a T-shirt. Parrott left and agreed to meet Kiernan after work (8:00PM) and they would go visit Paschetta.

Parrott stated that she went home and took a nap when she was awoken by a telephone call from Kiernan. She stated that Kiernan sounded very upset and wanted Parrott to return to the insured as she needed to speak with Parrott. She arrived and met Kiernan outside the door. Kiernan immediately told Parrott that she had to tell her something but not to show any expression as the camera was on her and she did not wish Ciambriello to see. She told Parrott that she had just been sexually assaulted by Ciambriello and did not know what to do. Parrott told her that she would support her but Kiernan would have to be the one to report it and / or tell Kiernan's husband. Kiernan agreed but asked Parrott to stay with her and that she would finish the night and they could discuss it with Paschetta. Once inside Parrott saw Ciambriello and he invited her into the work

area. Parrott asked if this would be ok because she did not want to get in trouble with the insured. Ciambriello agreed and they all returned to the work area. Parrott stated that she noticed Ciambriello to be quiet and appeared nervous. She stated that usually he would converse with her but that day he did not. She also stated that Kiernan appeared very upset and she noticed that Kiernan was having problems completing her duties. She stated that she even had problems entering data. Parrott stated that they all left without incident and she followed Kiernan to Parrott's home where Kiernan left her car and Parrott then drove them both to Paschetta's home. They arrived there at approximately 9:00pm and Kiernan spoke with Paschetta about the assault. As Parrott did Paschetta told Kiernan that it was her decision but he would assist her in any way he could. They talked for a few hours and returned home by 11:00 PM. Parrott then saw Kiernan drive off and did not hear anything until the next morning when the Attleboro Police came to her home and interviewed her.

Parrott stated that she has talked with Kiernan since the incident and feels that Kiernan is still visibly upset and having problems coping. I thanked Parrott for her time.

After leaving the insured I called the Kiernan residence and spoke to Mr. Kiernan. I was informed that they have hired Attorney Gary Orlacchio and all communications are to be made through this attorney.

I then contacted Laura Scougal, Claim rep. And provided her with this information.

William A. Bolton (NH, ME, FL & MA)
Patricia C. Fraizer (NH, ME & MA)
Christine M. Harding
Steven R. Kruczynski
Charles E. Miracle
Joseph W. Murphy (NH & MA)
Kathleen E. Nelson (RI & MA)
John H. Stevens (NH, MN & MA)
Pamela Storm
David G. Sullivan (RI & MA)

*Law Office of*
PAMELA STORM
10 POST OFFICE SQUARE, SUITE 1155
BOSTON, MASSACHUSETTS 02109

Telephone: (617) 556-0200
Fax: (617) 482-2643

# Fax Cover Sheet

Date:   June 1, 2001

To:     Laura Scougall

Fax #:  860-520-2288

From:   Pam Storm

Re:     Jane Doe v. Purity Supreme

Number of pages intended to accompany this transmittal     8

## MESSAGE

Hi Laura,
Here's a copy of that case we discussed. I will be in all day Monday.

Have a great weekend.

*Pam*

The material being transmitted herewith contains material which is considered privileged and is intended for receipt by the addressee named above only. Any further distribution, without the express written consent of the originator is prohibited. In the event of misdelivery, kindly inform the sender by telephone and destroy the erroneously-sent documents. Thank you.

12 IER Cases 330

Supreme Judicial Court of Massachusetts,
Middlesex.
Jane DOE & others [FN1]

FN1. John Doe, JR Doe, JC Doe, JM Doe, and JP Doe. A Superior Court judge ordered that pseudonyms be used for the plaintiffs and the individual defendant.

v.

PURITY SUPREME, INC., & another. [FN2]

FN2. The store manager, whom the parties have agreed not to name.

Argued Jan. 9, 1996.
Decided May 3, 1996.

Employee and others sued her employer and another to recover for injuries allegedly received in workplace rape and sexual assault. The Superior Court, Middlesex County, 1994 WL 878829, 1994 WL 879356, granted defendants' motion for summary judgment on all claims. The Supreme Judicial Court, granted plaintiffs' application for direct appellate review, and per Lynch, J., held that: (1) common-law negligence, assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress claims were barred by exclusivity provisions of workers compensation act; (2) claims under civil rights act, equal rights act and law guaranteeing right to be free from sexual harassment, were barred by exclusivity provisions of state's antidiscrimination law; (3) false imprisonment and accompanying loss of consortium claims were not barred by exclusivity provisions of workers compensation act; but (4) employer was not liable for false imprisonment.
Affirmed.

West Headnotes

[1] KeyCite Notes

⟶413 Workers' Compensation
⟶413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
⟶413XX(A) Between Employer and Employee
⟶413XX(A)1 Exclusiveness of Remedies Afforded by Acts
⟶413k2093 k. Willful or Deliberate Act or Negligence. Most Cited Cases

Employee's common law claims against employer for negligence, assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress for injuries allegedly received when her manager raped her during work hours on employer's premises arose out of employment and thus were barred by exclusivity provisions of workers compensation act; employee did not allege that she was connected with manager in any way except through their employment. M.G.L.A. c. 152, § 24.

[2] KeyCite Notes

⟶413 Workers' Compensation



⌐413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
    ⌐413XX(A) Between Employer and Employee
        ⌐413XX(A)1 Exclusiveness of Remedies Afforded by Acts
            ⌐413k2093 k. Willful or Deliberate Act or Negligence. Most Cited Cases

With certain exceptions, intentional torts are covered by workers compensation act, even when they are committed by co-employees. M.G.L.A. c. 152, § 1 et seq.

[3] KeyCite Notes

⌐413 Workers' Compensation
    ⌐413VIII Injuries for Which Compensation May Be Had
        ⌐413VIII(D) Particular Causes, Circumstances, and Conditions of Injury
            ⌐413VIII(D)14 Injuries by Acts of Co-Employee or of Third Person
                ⌐413k679 Assaults by Co-Employees
                    ⌐413k680 k. In General. Most Cited Cases

Injuries resulting from physical assaults by one employee on another are compensable under workers' compensation act. M.G.L.A. c. 152, § 1 et seq.

[4] KeyCite Notes

⌐413 Workers' Compensation
    ⌐413VIII Injuries for Which Compensation May Be Had
        ⌐413VIII(A) Nature and Character of Physical Harm
            ⌐413VIII(A)2 Diseases, Infections, and Poisoning
                ⌐413k531 Particular Diseases
                    ⌐413k546 k. Mental and Nervous Diseases. Most Cited Cases

Workers compensation act allows employees to recover for emotional injuries which are shown to have arisen out of and in the course of employment. M.G.L.A. c. 152, § 1 et seq.

[5] KeyCite Notes

⌐413 Workers' Compensation
    ⌐413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
        ⌐413XX(A) Between Employer and Employee
            ⌐413XX(A)1 Exclusiveness of Remedies Afforded by Acts
                ⌐413k2093 k. Willful or Deliberate Act or Negligence. Most Cited Cases

Exclusivity provision of workers' compensation act precludes action against employer for negligent and intentional infliction of emotional distress arising out of sexual harassment in the workplace. M.G.L.A. c. 152, § 24.

[6] KeyCite Notes

⌐413 Workers' Compensation
    ⌐413VIII Injuries for Which Compensation May Be Had
        ⌐413VIII(D) Particular Causes, Circumstances, and Conditions of Injury
            ⌐413VIII(D)14 Injuries by Acts of Co-Employee or of Third Person

⇨413k678 k. Injuries from Acts of Co-Employee or Third Person in General. Most Cited Cases

⇨413 Workers' Compensation
   ⇨413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
      ⇨413XX(A) Between Employer and Employee
         ⇨413XX(A)1 Exclusiveness of Remedies Afforded by Acts
           ⇨413k2084 k. In General. Most Cited Cases

Injuries resulting from rape or other sexual assault are "personal injuries" within meaning of workers' compensation act, and any tort claims seeking to recover against employer for these injuries are barred by exclusivity provisions of Workers' Compensation Act. M.G.L.A. c. 152, § 24.

[7] KeyCite Notes

⇨413 Workers' Compensation
   ⇨413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
      ⇨413XX(A) Between Employer and Employee
         ⇨413XX(A)1 Exclusiveness of Remedies Afforded by Acts
           ⇨413k2084 k. In General. Most Cited Cases

In determining whether workers' compensation act bars common law claims, court looks at nature of claims, not source of injury. M.G.L.A. c. 152, § 24.

[8] KeyCite Notes

⇨413 Workers' Compensation
   ⇨413VIII Injuries for Which Compensation May Be Had
      ⇨413VIII(C) Injuries Arising Out of and in Course of Employment in General
         ⇨413k607 Arising Out of Employment in General
           ⇨413k610 k. What Injuries Arise Out of Employment in General. Most Cited Cases

Injury arises out of the employment, and thus common law remedies are barred by exclusivity provisions of workers compensation act, if it arises out of the nature, conditions, obligations, or incidents of the employment; i.e. out of the employment looked at in any of its aspects. M.G.L.A. c. 152, § 24.

[9] KeyCite Notes

⇨413 Workers' Compensation
   ⇨413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
      ⇨413XX(A) Between Employer and Employee
         ⇨413XX(A)1 Exclusiveness of Remedies Afforded by Acts
           ⇨413k2093 k. Willful or Deliberate Act or Negligence. Most Cited Cases

Court would not fashion common law exception to exclusivity provisions of workers compensation act, for cases of rape, sexual assault, and sexual harassment, since legislature had already created statutory one. M.G.L.A. c. 151B, § 4; c. 152, § 24; c. 214, § 1C.

[10] KeyCite Notes

⇐78 Civil Rights
   ⇐78III State Remedies
      ⇐78k448 Civil Actions
         ⇐78k449 k. Nature and Grounds. Most Cited Cases

Claims brought by employee against her employer under civil rights act, equal rights act and law guaranteeing freedom from sexual harassment, to recover for injuries allegedly suffered in workplace rape and sexual assault were barred by exclusivity provisions of state's antidiscrimination law. M.G.L.A. c. 12, § 11I; c. 151B, § 1 et seq.; c. 214, § 1C.

[11] KeyCite Notes

⇐413 Workers' Compensation
   ⇐413XX Effect of Act on Other Statutory or Common-Law Rights of Action and Defenses
      ⇐413XX(A) Between Employer and Employee
         ⇐413XX(A)1 Exclusiveness of Remedies Afforded by Acts
            ⇐413k2093 k. Willful or Deliberate Act or Negligence. Most Cited Cases

Employee's false imprisonment and accompanying loss of consortium claims against employer were not barred by exclusivity provisions of workers' compensation act. M.G.L.A. c. 152, § 24.

[12] KeyCite Notes

⇐168 False Imprisonment
   ⇐168I Civil Liability
      ⇐168I(A) Acts Constituting False Imprisonment and Liability Therefor
         ⇐168k15 Persons Liable
            ⇐168k15(1) k. In General. Most Cited Cases

⇐255 Master and Servant
   ⇐255IV Liabilities for Injuries to Third Persons
      ⇐255IV(A) Acts or Omissions of Servant
         ⇐255k302 Scope of Employment
            ⇐255k302(3) k. Assault and Battery. Most Cited Cases

⇐255 Master and Servant
   ⇐255IV Liabilities for Injuries to Third Persons
      ⇐255IV(A) Acts or Omissions of Servant
         ⇐255k307 k. Criminal Acts of Servant. Most Cited Cases

Rape and sexual assault were not within the scope of an assistant store manager's employment, and thus his employer was not liable, under false imprisonment theory, to another employee who was allegedly raped and sexually assaulted by manager; manager's conduct was not motivated by purpose to serve employer and there was no evidence that employer authorized or directed manager's conduct or that manager's actions were kind that he was employed to perform.

[13] KeyCite Notes

⇐255 Master and Servant
   ⇐255IV Liabilities for Injuries to Third Persons
      ⇐255IV(A) Acts or Omissions of Servant

⇒255k300 k. Nature of Master's Liability. Most Cited Cases

⇒255 Master and Servant
  ⇒255IV Liabilities for Injuries to Third Persons
    ⇒255IV(A) Acts or Omissions of Servant
      ⇒255k302 Scope of Employment
        ⇒255k302(2) k. Acts for Which Master Is Liable in General. Most Cited Cases

Employer may be held vicariously liable for intentional tort of agent if tortious act or acts were committed within the scope of employment; agent's conduct is "within the scope of employment" if it is of the kind he is employed to perform, if it occurs substantially within authorized time and space limits, and if it is motivated, at least in part, by purpose to serve employer.

**817 *563 Workers' Compensation Act, Exclusivity provision, Emotional distress. Employment, Sexual harassment. Anti-Discrimination Law, Sex, Employment. Civil Rights, Availability of remedy. False Imprisonment.

CIVIL ACTION commenced in the Superior Court Department on November 10, 1993.

The case was heard by Wendie I. Gershengorn, J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

Norman F. Lazarus (Anthony Pignone with him), Boston, for the plaintiffs.

*564 Arthur G. Telegen (Amy B.G. Katz with him), Boston, for the defendants.

The following submitted briefs for amici curiae:

Robert S. Manell, Marisa A. Campagna & Laura Matlow, Boston, for Massachusetts Chapter of the National Employment Lawyers Association.

Frederick T. Golder, Lynnfield, for Employment Law Center.

Jane Byeff Korn, pro se.

Before LIACOS, C.J., and WILKINS, ABRAMS, LYNCH, O'CONNOR, GREANEY and FRIED, JJ.

LYNCH, Justice.

The plaintiffs filed a nineteen-count complaint arising from the alleged rape and sexual assault of Jane Doe by an employee of the defendant **Purity Supreme**, Inc. (Purity). The plaintiffs brought common law claims for negligence, assault and battery, false imprisonment, intentional and negligent infliction of emotional distress, and loss of consortium. The plaintiffs also brought statutory claims under G.L. c. 214, § 1C (1994 ed.), the Massachusetts Civil Rights Act, G.L. c. 12, § 11I (1994 ed.) (civil rights act), the Massachusetts Equal Rights Act, G.L. c. 93, § 102, (1994 ed.) (equal rights act), and the Consumer Protection Act, G.L. c. 93A (1994 ed.).

In an initial decision, the trial judge granted summary judgment to the defendants on all of the plaintiffs' claims except for the false imprisonment claim and the loss of consortium claims accompanying it. The judge ruled that the common law claims were **818 barred by the exclusivity provisions of the workers' compensation act, G.L. c. 152, § 24 (1994 ed.). She also decided that all the statutory claims, with the exception of the claim under G.L. c. 93A, were barred by the exclusivity provisions of the Massachusetts antidiscrimination law, G.L. c. 151B, § 9 (1994 ed.). See *Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 586, 631 N.E.2d 555 (1994). [FN3] In a second decision, the judge granted summary judgment to the defendants on the false imprisonment claim on the rationale that Purity was not vicariously liable for the actions of its employee. The plaintiffs appealed from these judgments. We granted the *565 plaintiffs' application for direct appellate review and now affirm. [FN4]

> FN3. The judge also ruled that the plaintiffs' claims under G.L. c. 93A (1994 ed.) failed as a matter of law. See *Manning v. Zuckerman*, 388 Mass. 8, 15, 444 N.E.2d 1262 (1983). See note 7, *infra*.

> FN4. We acknowledge the amicus briefs of the National Employment Lawyers

Association, Massachusetts Chapter, and the Employment Law Center, on behalf of the plaintiffs.

The summary judgment record demonstrates the following (see *Judson v. Essex Agric. & Technical Inst.*, 418 Mass. 159, 162, 635 N.E.2d 1172 [1994]): Jane Doe was working at one of **Purity**'s stores on the night of November 18, 1990, when another employee, designated by the parties as the assistant store manager, visited the store. [FN5] The assistant store manager, who was not scheduled to work, sent home every employee but Doe. While Doe and the assistant store manager were working in the manager's office, the assistant store manager sexually assaulted and raped Doe.

> FN5. Since the assistant store manager is not a party to this action, the plaintiffs' common law claims against him are unaffected by the decision in this case.

Prior to this incident, **Purity** had disciplined the assistant store manager several times for sexual harassment. Moreover, several **Purity** employees had complained of the assistant store manager's inappropriate conduct. **Purity** subsequently terminated the assistant store manager.

[1] 1. *Workers' compensation exclusivity.* The judge's decision that the plaintiffs' claims for negligence, assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress were barred by the exclusivity provision of the workers' compensation act was correct.

[2] [3] [4] [5] [6] First, it is clear that physical and emotional injuries resulting from rape and other forms of sexual assault are compensable under the workers' compensation act. Except for certain exceptions not applicable here, intentional torts are covered by the workers' compensation act, even when they are committed by coemployees. *Anzalone v. Massachusetts Bay Transp. Auth.*, 403 Mass. 119, 124, 526 N.E.2d 246 (1988). Therefore, injuries resulting from physical assaults by one employee on another are compensable. *Dillon's Case*, 324 Mass. 102, 106-107, 85 N.E.2d 69 (1949). The workers' compensation act allows employees to recover for emotional injuries which are shown to have arisen out of and in the course of employment. *Foley v. Polaroid Corp.*, 381 Mass. 545, 548-550, 413 N.E.2d 711 (1980) (*Foley I*). See *Albanese's Case*, 378 Mass. 14, 389 N.E.2d 83 (1979). Finally, as we conclude today in *566 Green v. Wyman-Gordon Co.*, 422 Mass. 551, 664 N.E.2d 808 (1996), the exclusivity provision of the workers' compensation act also precludes an action against an employer for negligent and intentional infliction of emotional distress arising out of sexual harassment in the workplace. Under these principles, it follows that the injuries resulting from a rape or other sexual assault are "personal injuries" within the meaning of the workers' compensation act and any tort claims seeking to recover against the employer for these injuries are barred by the exclusivity provision of the workers' compensation act. See G.L. c. 152, § 24 (1994 ed.).

[7] [8] The plaintiffs ask us to create an exception to this general rule, on the ground that sexual assault is not a "normal risk" of employment. See Korn, The Fungible Woman and Other Myths of Sexual Harassment, 67 Tul.L.Rev. 1363, 1384-1389 (1993). The plaintiffs misconstrue the focus of our inquiry. In determining whether the workers' **819 compensation act bars common law claims, we look at the nature of the claims, not the source of the injuries. See *Foley v. Polaroid Corp.*, 400 Mass. 82, 93, 508 N.E.2d 72 (1987) (*Foley II*). "[The injury] need not arise out of the nature of the employment. An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects," *Caswell's Case*, 305 Mass. 500, 502, 26 N.E.2d 328 (1940). See *Souza's Case*, 316 Mass. 332, 334, 55 N.E.2d 611 (1944). Here, the assistant store manager is alleged to have raped an employee during work hours on the employer's premises. The plaintiffs do not allege that the two

individuals were connected in any way except through their employment. The injuries arose out of the employment within the meaning of the statute. Accordingly, the plaintiffs' common law claims based on them are barred when it is only on this premise that Purity can plausibly be made a defendant here at all. See *Clarke v. Kentucky Fried Chicken of Cal., Inc.*, 57 F.3d 21, 29 (1st Cir.1995).

[9] The plaintiffs also argue that public policy requires an exception from workers' compensation exclusivity for cases of rape, sexual assault, and sexual harassment. In so arguing, the plaintiffs ignore the fact that the Legislature has provided employees with a separate remedy for sexual harassment in G.L. c. 151B, § 4, and G.L. c. 214, § 1C, as we note today in *Green v. Wyman-Gordon Co., supra,* and *Guzman v. Lowinger,* 422 Mass. 570, 664 N.E.2d 820 (1996). *It is undisputed, however, that the plaintiffs in this case did not meet the procedural prerequisites for such a claim. We decline to fashion a common law exception to the exclusivity provisions of the workers' compensation act where the Legislature has already created a statutory one.*

[10] We note that courts in other jurisdictions have also concluded that workers' compensation statutes bar recovery in tort for sexual assault and rape. See, e.g., *Tolbert v. Martin Marietta Corp.,* 759 P.2d 17 (Colo.1988); *Knox v. Combined Ins. Co.,* 542 A.2d 363 (Me.1988). The cases cited by the plaintiffs for the contrary proposition are inapposite. *Copithorne v. Framingham Union Hosp.,* 401 Mass. 860, 520 N.E.2d 139 (1988), involves the rape of a hospital employee by a visiting staff physician, while the physician was treating the employee for a back problem at her home. The court allowed the plaintiff employee to proceed against the hospital on a negligence theory. *Id.* at 865, 520 N.E.2d 139. First, it is not clear that the workers' compensation exclusivity defense was raised. Second, the plaintiff was not suing in her capacity as employee, but in her capacity as a patient. Third, the action did not arise out of the plaintiff's employment, and so the workers' compensation act did not apply. See G.L. c. 152, § 26 (1994 ed.). See also *Choroszy v. Wentworth Inst. of Technology,* 915 F.Supp. 446, 452 (D.Mass.1996). [FN6] We therefore affirm the judgment of the Superior Court.

> FN6. The cases that the plaintiffs and an amicus cite from other jurisdictions are not persuasive. In *Cremen v. Harrah's Marina Hotel Casino,* 680 F.Supp. 150 (D.N.J.1988), for example, the court concluded that an intentional infliction of emotional distress claim arising from a sexual assault was not barred by workers' compensation exclusivity under New Jersey law. In so finding, the court relied on an explicit exception for intentional acts of coemployees. Cf. *Foley v. Polaroid Corp.,* 381 Mass. 545, 550, 413 N.E.2d 711 (1980) (no exception for intentional infliction of emotional distress). Other cases involve the same or similar exceptions to workers' compensation exclusivity which have been rejected in Massachusetts. See *Green v. Wyman-Gordon Co.,* 422 Mass. at 561 n. 15, 664 N.E.2d 808 (1996), and cases cited.

2. *General Laws c. 151B exclusivity.* For the reasons set forth in *Green v. Wyman-Gordon Co., supra,* we agree with the judge that the plaintiffs' claims under the civil rights act, equal rights act, and G.L. c. 214, § 1C, were barred by the exclusivity provision of G.L. c. 151B. See *Charland v. Muzi Motors, Inc., supra* at 586, 631 N.E.2d 555.

[11] [12] *568 3. *False imprisonment.* The judge correctly held that the plaintiffs' claim for false imprisonment (and accompanying loss of consortium claims) is not barred by the exclusivity provision of the workers' compensation act. See *Foley II, supra* at 93, 508 N.E.2d 72; *Madden's Case,* 222 Mass. 487, 492, 111 N.E. 379 (1916). The defendants urge us to affirm the judge's conclusion that the employer is not liable because rape and sexual assault were not within the scope of **820 the assistant store manager's employment. We agree.

[13] "An employer may be held vicariously liable for the intentional tort of an agent if the tortious act or acts were committed within the scope of employment." *Worcester Ins. Co. v. Fells*

*Acres Day Sch., Inc.*, 408 Mass. 393, 404, 558 N.E.2d 958 (1990). "[C]onduct of an agent is within the scope of employment if it is of the kind he is employed to perform ...; if it occurs substantially within the authorized time and space limits ...; and if it is motivated, at least in part, by a purpose to serve the employer ..." (citations omitted). *Id.*, quoting *Wang Lab., Inc. v. Business Incentives, Inc.*, 398 Mass. 854, 859, 501 N.E.2d 1163 (1986). Cf. *Kansallis Fin. Ltd. v. Fern*, 421 Mass. 659, 664, 669, 659 N.E.2d 731 (1996).

Here, the assistant store manager's conduct, as alleged, was not motivated by a purpose to serve the employer. We agree with the judge: "[T]here is no evidence that the defendants authorized or directed the [assistant store manager's] conduct or that his action was the kind of action that **Purity Supreme** employed him to perform." In a somewhat different context, this court concluded that an employee who sexually harassed a coemployee was not "furthering the interests of the employer." *O'Connell v. Chasdi*, 400 Mass. 686, 690, 511 N.E.2d 349 (1987). Similarly, rape and sexual assault of an employee do not serve the interests of the employer. Consequently, the plaintiffs have failed to allege facts that would show that the assistant store manager was acting within the scope of employment. Therefore, the judge was correct in granting summary judgment for the defendants on the false imprisonment count. [FN7]

> FN7. We also affirm the judge's grant of summary judgment on the plaintiffs' claim under G.L. c. 93A. See *Manning v. Zuckerman*, 388 Mass. 8, 15, 444 N.E.2d 1262 (1983) (employment disputes not cognizable under c. 93A).

*569 We therefore affirm the granting of summary judgment on all counts of the plaintiffs' complaint.
*So ordered.*
Mass.,1996.
Doe v. Purity Supreme, Inc.
END OF DOCUMENT

Copr. (C) West 2001 No Claim to Orig. U.S. Govt. Works

| | |
|---|---|
| From: | Closson, Maureen (CLAIM, Claims) |
| Sent: | Sunday, June 03, 2001 10:02 AM |
| To: | Crabb, Gregory J (CLAIM, Claims) |
| Cc: | Scougall, Laura (CLAIM, Claims); Teran, Wendy (CLAIM, Claims) |
| Subject: | FW: Heather Kiernan |

Hi Greg,
This is a MA claim where the injured worker claims she was raped by a co-worker while on the job. The investigation thus far has not shed much light on the validity of the claim. At this point, I do not want to accept the claim. The policyholder, as you can see from the below wants us to pick up the claim. Without knowing the extent of the damages, and where the file is going, I am concerned about accepting even with the policyholder having the first $250,000.

Initially, the CSC said that all of the $$ was the policyholder's money. As you can see, they have the first $250,000. This is Ray Sprague's/Rick Collier's business and I would like them to know the situation.

Please advise how you want me to handle. You should note that our SIU person and the claim handler will be going to MA on Monday in an attempt to obtain more information. The contact at the policyholder has not been forthcoming thus far.

Thanks.

Maureen
860-547-7052

-----Original Message-----

| | |
|---|---|
| From: | Scougall, Laura (CLAIM, Claims) |
| Sent: | Friday, June 01, 2001 11:45 AM |
| To: | Closson, Maureen (CLAIM, Claims) |
| Cc: | Teran, Wendy (CLAIM, Claims) |
| Subject: | Heather Kiernan |

Hi Maureen,
If you get a few minutes today could you call me on this claim? I've spoken with Sharan Seaman's and the ins. is still hot to start paying this. We have until Tuesday to make a decision. She also said that John Figulski in H.O. wants to be kept in the loop on this. I'm not sure who this is, she figured you'd know.
The first $250,000 is the ins. $ and the agent is a platinum agent who also wants this picked up. We think that the ins. is being told by their FL. atty. that if we pick it up, it will stop her from putting any other claim in. In Mass, she can still put a claim in the MCAD - Mass Commission Against Discrimination. Funny how they're taking advice from a Florida atty.
The iw is a low wage earner, cr of $179.47. The million dollar question is do we deny it and possibly have the ins. and agent very angry or make an agreement with the ins. that we'll pay let's say 4 weeks pwp and file a 106 based on no disability, etc. etc.
What to do, what to do.
Laura