FILED
UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2001 APR -2 P 12: 28

**HEATHER KIERNAN,**

    Plaintiff,

U.S. DISTRICT COURT
DISTRICT OF MASS.

CIVIL NO: 04-10131 RBC

V

**ARMORED MOTOR SERVICE OF AMERICA, INC., and FRANCESCO CIAMBRIELLO,**

    Defendants.

### DEFENDANT, FRANCESCO CIAMBRIELLO'S PRE TRIAL MEMORANDUM

#### SUMMARY OF EVIDENCE

Defendant, Francesco Ciambriello, expects to present the following evidence at trial:

Defendant, Francesco Ciambriello ("Mr. Ciambriello"), was employed as a part time vault supervisor at AMSA's Attleboro facility, working nights and weekends, between March 12, 2001 and May 20, 2001. As a part time vault supervisor, Mr. Ciambriello (1) did not have the authority to hire or fire any employees; (2) did not have the authority to discipline employees; (3) was not responsible for evaluating the work of employees or scheduling hours of work for any employees; (4) did not have the ability to assign work to employees; and (5) was not involved in making decisions regarding promotions, demotions or discipline of employees. On the weekend shifts, Mr. Ciambriello's duties were limited to sending the trucks on the road, making sure the trucks had the correct amount of money and making sure the building was safe and secure.

Plaintiff, Heather Kiernan, ("Ms. Kiernan"), and Mr. Ciambriello were both scheduled to work on Saturday, May 19, 2001. Although she had an infant, Ms. Kiernan left her home on May 19, 2001

at approximately 9:00 a.m. and told her husband that she was going to work. Ms. Kiernan did not report to work until 3:00 p.m. on May 19, 2001. She has never disclosed where she spent the more than five hours that passed between leaving home and reporting to work, despite repeated inquiries by her husband as to her whereabouts during this time frame. Notwithstanding being away from her husband and baby between 9 a.m. and 3 p.m. on May 19, 2001, Ms. Kiernan made plans to socialize with her friend and co-worker, Christina Parrot, after work on May 19, 2001.

Ms. Kiernan reported to work on May 19, 2001 at approximately 3:00 p.m. as scheduled. Until the trucks returned from their delivery runs, there was nothing for Ms. Kiernan and Mr. Ciambriello to do. While she was waiting, Ms. Kiernan called Ms. Parrot on the telephone to have Ms. Parrot drive down to AMSA so that she could give Ms. Parrot some money so she could purchase alcohol that the two intended to drink after Ms. Kiernan was finished with work. When Ms. Parrot arrived at AMSA, Ms. Kiernan and Mr. Ciambriello left the building to meet Ms. Parrot outside in the parking lot. All three smoked cigarettes and Ms. Kiernan gave Ms. Parrot money for the alcohol purchase. While outside in the parking lot, Mr. Ciambriello left the vault unlocked and unattended, which was a serious breach of AMSA policy. After finishing their cigarettes, Ms. Parrot left and Ms. Kiernan and Mr. Ciambriello went back inside to continue waiting for the arrival of the trucks.

While Ms. Kiernan and Mr. Ciambriello continued to wait for the first truck to arrive in the dispatch area, Ms. Kiernan complained that her shoulder hurt and Mr. Ciambriello gave her a shoulder massage. Ms. Kiernan appeared receptive. After talking, the two decided to go to the branch manager's office. They walked together down the hallway to the branch manager's office, Mr. Ciambriello unlocked the door and the two entered.

Once in the branch manager's office, they began to kiss and hug for a few minutes until Ms. Keirnan broke away and indicated that she did not wish to continue. She then indicated that she needed to use the ladies room and left the office. Ms. Kiernan and Mr. Ciambriello were in the manager's office for approximately five minutes.

Because Mr. Ciambriello needed to unlock the door to get back into the dispatch area, he waited for Ms. Kiernan in the break room. After she exited the restroom, they returned to the dispatch are to continue waiting for the arrival of the trucks.

AMSA's Attleboro facility was equipped with numerous "hold up" buttons, which will activate a silent alarm to the Attleboro Police Department when pushed, including one which was located in the dispatch area and one in the branch manager's office. All of the buttons were prominently marked with a large sign that said "Hold Up Button". Ms. Kiernan never pushed any of the hold up buttons during or after the alleged sexual assault, which would have alerted the police that there was a problem at the facility and brought them to the facility.

At some point after returning to the dispatch area from the branch manager's office, Ms. Kiernan called her friend Christina Parrot on the telephone and asked her to come back to the Attleboro facility. When Ms. Parrot arrived, Ms. Kiernan again went outside to meet Ms. Parrot in AMSA;s parking lot. Mr. Ciambriello remained inside the building while Ms. Kiernan went outside. Ms. Kiernan and Ms. Parrot again smoked cigarettes in the parking lot. While outside, Ms. Kiernan told Ms. Parrot that "something had happened", and that she wanted Ms. Parrot to come back into the building with her. Ms. Parrot went inside and remained with Ms. Kiernan for the remainder of her shift. It is important to point out that Ms. Kiernan, while outside with Ms. Parrot, had the

opportunity to leave the facility if she felt as though she were in a dangerous situation. She had her own vehicle, as well as Ms. Parrot's vehicle to leave the facility. Further, it should be noted that not only did Ms. Kiernan choose to remain at AMSA, but she also did not contact the police department, even though both she and Ms. Parrot had functioning cellular telephones.

At least one driver/messenger team (and possibly two or three teams) entered the facility after Ms. Keirnan and Mr. Ciambriello had returned to the dispatch area from the branch manager's office. Both the driver and the messenger carry a firearm on their person while they work. Ms. Kiernan had the opportunity, but did not disclose the alleged sexual assault to any of the drivers or messengers that came into the building, nor did she do or say anything to indicate to them that she was concerned for her safety. Quite contrary, Ms. Kiernan was laughing and in good spirits, according to what was seen during the viewing of the videotapes.

After the last truck had been unloaded and the money accounted for and placed in the vault, Ms. Parrot and Ms. Kiernan left the facility. At the time that they left, Mr. Ciambriello was still inside finishing up his work. Once outside in AMSA's parking lot, Ms. Kiernan and Ms. Parrot agreed to meet at Shaw's supermarket. At the Shaw's supermarket, Ms. Kiernan left her car and went to sit in Ms. Parrot's car. Ms. Parrot then called Michael Pascetta, another AMSA co-worker, on her cell phone, instead of calling the police department. Mr. Pascetta invited Ms. Kiernan and Ms. Parrot to visit him at his home in Johnston, Rhode Island.

Ms. Parrot drove herself and Ms. Kiernan to Mr. Pascetta's home, where they remained for more than two hours. During their visit, Ms. Parrot and Ms. Kiernan drank the alcohol that Ms. Parrot had purchased earlier in the day. Mr. Pascetta was inebriated before Ms. Parrot and Ms.

Kiernan arrived, as he had consumed a large amount of alcohol during the day and he continued to drink alcohol throughout their visit.

At approximately 11:00 p.m., Ms. Parrot and Plaintiff left Mr. Pascetta's home. Ms. Parrot dropped Ms. Kiernan off at her car at the Shaw's supermarket and Ms. Kiernan drove home. At no time during the day from the time Ms. Kiernan had left her home at 9:00 a.m. until she returned ten hours later, did Ms. Kiernan make any effort to telephone her husband to check on her baby. When Ms. Kiernan arrived home, her husband asked her where she had been and indicated that he had been trying to reach her for several hours. Ms. Kiernan told him that she had been raped at work. She failed to disclose to her husband that she had actually left work hours earlier and had gone to Mr. Pascetta's house after leaving work with Ms. Parrot for several hours. After telling her husband that she had been raped, the husband called the Attleboro Police to report the matter and also called an ambulance.

When first interviewed by the police, Ms. Kiernan told the police that she had remained in AMSA's parking lot for one hour after leaving work until Mr. Ciambriello drove away, as she was afraid that the would follow her. She did not disclose to the police that she had driven to Michael Pascetta's house and spent several hours there before returning home.

The Attleboro police subsequently notified AMSA to report that Plaintiff was claiming to have been raped while at work on Saturday, May 19, 2001 by another employee, Francesco Ciambriello. When AMSA and the police reviewed AMSA's security videotapes for May 19, 2001, AMSA discovered that Mr. Ciambriello had gone outside during his shift to smoke a cigarette with Ms. Kienan and Ms. Parrot and when doing so, he had left the vault open and unattended. The police

took three of the six security videotapes as evidence in its criminal investigation. On August 17, 2001, Detective Otrando returned to the Attleboro facility with a subpoena for the remaining three videotapes. AMSA obtained a "receipt" from Detective Otrando after turning over the three remaining videotapes to the police. On the receipt, Detective Otrando acknowledged that as of that date, the Attleboro police were in possession of all six videotapes from May 19, 2001.

Branch Manager, Jason Khoury, contacted Francesco Ciambriello on Sunday, May 20, 2001 to advise him that he was suspended from AMSA for three days for leaving the building with the vault open on May 19, 2001. Mr. Ciambrello was notified after his suspension was completed that his employment with AMSA had been terminated.

On May 22, 2001, Ms. Kiernan went to New Hope, a rape and domestic violence crisis center. The patient intake form completed by the counselor that met with Ms. Kiernan indicated that Ms. Kiernan had represented that she was the victim of domestic abuse by her husband. Although the form had a section regarding sexual assault/rape, there is no mention on the form that Ms. Kienan indicated to the counselor that she had been raped three days earlier.

In December, 2002, Christopher Abreu ("Mr. Abreu"), a Bristol County Assistant District Attorney and counsel for the Defendant, David Ardito, came to the Attleboro facility to view the videotapes. Mr. Abreu brought the videotapes with him which his office had obtained from the police. After viewing the tapes on AMSA's equipment, this attorney and Mr. Abreu left. Mr. Abreu has acknowledged that he never would have left the tapes at AMSA unless he had been specifically instructed to do so by his superiors in the District Attorney's Office (which he was not) because there would have been no way to ensure that the tapes were not tampered with once they left his custody.

Mr. Abreu further noted that if he had left the videotapes, the proper protocol would have been for him to issue a receipt to AMSA reflecting that fact. He did not issue such a receipt; however, during questioning in the criminal trial, Mr. Abreu testified that while viewing the videotapes, he saw no apparent violence or assault.

Ms. Kiernan was already on a downward life spiral prior to May 19, 2001. On May 18, 2001, Ms. Kiernan's husband found an amorous e-mail that Ms. Kiernan had sent to AMSA co-worker, Michael Pascetta, which suggested that they were involved in a romantic relationship, notwithstanding that Ms. Kiernan was married. In addition, Ms. Kiernan had been terminated from her prior job as a supervisor at Delkin Dry cleaners for stealing and had been arrested and charged with larceny. Prior to working at Delkin Dry Cleaners, Ms. Kiernan held a number of menial jobs, all for short periods of time and all of which ended under mysterious circumstances according to her husband. Both before and during her pregnancy, Ms. Kiernan kept late hours and would not disclose to her husband where or with whom she was spending her time or what she was doing, including one instance in which she "disappeared" for more than 24 hours causing her family to contact the police. After May 19, 2001, Ms. Kiernan continued her spiral downward. She and her husband filed several cross petitions for restraining orders and custody, each claiming that the other was physically violent. Ms. Kiernan became addicted to crack cocaine in 2004 and disappeared for several months without disclosing to her husband or other family members where she was. After several attempts to reconcile, Ms. Kiernan and her husband were finally divorced.

It should be noted that Defendant, Francesco Ciambriello, was found not guilty on the rape charge and there was a hung jury on the sexual assault charge, which later, through his attorney, was negotiated down to a far lesser charge.

1. **Stipulated Facts**

    A. Ciambriello did not have the authority to hire or fire employees.

    B. AMSA had a policy and training in place to prevent sexual harassment.

    C. Kiernan was provided with a copy of AMSA's sexual harassment policy at the beginning of her employment with AMSA.

    D. Ciambriello was provided with a copy of AMSA's sexual harassment policy at the beginning of his employment at AMSA.

    E. Ciambriello was terminated from his employment at AMSA.

2. **Disputed Facts**

    All facts, other than those set forth above in the Stipulated Facts Section of this Memorandum, are disputed.

3. **Issues of Law**

    A. Whether or not there is an issue of spoilation of evidence.

    B. Whether Kiernan was subjected to a hostile work environment pursuant to M.G.L.c. 151B

    C. Whether Kiernan was subject to a hostile work environment pursuant to Title VII of the Civil Rights Act of 1964 as amended.

    D. Whether Kiernan unreasonably failed to take advantage of any preventive or corrective opportunities provided by AMSA related to her claim of sexual harassment.

    E. Whether Ciambriello was a supervisor for the purposes of establishing liability under M.G.L.c.151B

    F. Whether Ciambriello was a supervisor for the purposes of establishing liability under Title VII.

    G. Whether the Defendant AMSA showed a reckless and callous disregard for the Plaintiff's civil rights.

    H.    Whether the actions of Defendant, Francesco Ciambriello, were willful, and done with threats, intimidation or coercion in violation of M.G.L.c.12 §11.

    I.    Whether the Plaintiff was a willing participant.

**4.    Requested Amendments to Pleadings**

For Defendant, Francesco Ciambriello:   NONE

**5.    Additional Matters to Aid in the Disposition of the Action**

**6.    Names of Witnesses to be Called (and purposes)**

For the Defendant, Francesco Ciambriello

Defendant, Francesco Ciambriello, intends on calling some or all of the witnesses identified by Plaintiff.

Defendant, Francesco Ciambriello also anticipates on calling some or all of the witnesses identified by Defendant, AMSA.

**7.    Exhibits**

For the Defendant, Francesco Ciambriello:

The Defendant, Francesco Ciambriello, intends on duplicating the exhibits presented by Defendant, AMSA.

**8.    Names, Addresses and Telephone Numbers of Trial Counsel**

David R. Ardito
Law Office of David R. Ardito
Bates Building, Suite #215-A
7 North Main Street
Attleboro, Massachusetts 02703
1-508-431-2222

                                      Respectfully submitted,
                                      **FRANCESCO CIAMBRIELLO,**
                                      By and through his attorney,

                                      /s/ David R. Ardito
                                      David R. Ardito, Esquire
                                      Law Office of David R. Ardito
                                      Bates Building, Suite #215-A
                                      7 North Main Street
                                      Attleboro, MA 02703
                                      1-508-431-2222
                                      BBO# 630025

Dated: March 29, 2007

### Certificate of Service

I, David R. Ardito, hereby certify that I have served a copy of the foregoing Pre-Trial Memorandum to interested parties in this matter by electronic mail and via first class, postage pre-paid mail on this 29th day of March 2007 as follows:

                                      /s/ David R. Ardito

| William J. McLeod | Allison Romantz |
|---|---|
| McLeod Law Offices, PC | Morgan Brown & Joy, LLP |
| 77 Franklin Street | 200 State Street |
| Boston, MA 02110 | Boston, MA 02109 |
| 1-617-542-2956 | 1-617-523-6666 |



The Law Office of

*David R. Ardito*

FILED
IN CLERKS OFFICE
2007 APR -2

| | | |
|---|---|---|
| Telephone: 1(508)431-2222 | U.S. DISTRICT COURT | Bates Building, Suite #215-A |
| Facsimile: 1(508)431-2211 | DISTRICT OF MASS. | 7 North Main ... |
| E-Mail: drardito@aol.com | | Attleboro, MA 02703 |

March 29, 2007

United States District Court
US District Courthouse
One Courthouse Way
Bosotn, MA 02110

**In Re: Heather Kiernan v. Armored Motor Service of America, Inc. and Francesco Ciambriello**

Dear Sir or Madam:

As you know, this office represents Defendant, Francesco Ciambriello in the above-entitled matter. Enclosed herewith please find my client's Pre Trial Memorandum.

Thank you for your kind attention.

Very truly yours,


David R. Ardito

DRA/ld
encl.

cc:   Allison Romantz (w/encl.)
      William McLeod (w/encl.)