UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS AT BOSTON

_____

HEATHER KIERNAN,

       Plaintiff,

-v-                                            CIVIL NO. 04-10131 RBC

ARMORED MOTOR SERVICE OF
AMERICA, INC., and
FRANCESCO CIAMBRIELLO

       Defendants.
_____

**MEMORANDUM OF LAW REGARDING**
**<u>PLAINTIFF'S PROPOSED RESOLUTIONS OF SPOLIATION ISSUES</u>**
**(CORRECTED)[1]**

Pursuant to this Court's procedural order the Plaintiff submits this memorandum of law setting forth her position as to how the Court (or jury) should resolve the spoliation issues in this case.

**<u>Procedural Background</u>**

On February 10, 2006, the Plaintiff filed a Motion for Sanctions and Other Relief or in the Alternative, Motion for Bifurcation Against the Defendants Armored Motor Service of America, Inc. ("AMSA") and Francesco Ciambriello ("Ciambriello") for Spoliation of Evidence. (Docket no. 61). Only AMSA opposed. The Court denied the motion but ordered the parties to propose how the spoliation issues should be addressed by the Court or by the jury. As the parties

---

[1] This Memorandum corrects a misstatement that Detective Otrando heard the audio on the tapes. After review of his deposition and his grand jury testimony, it appears that he did not hear the audio. This Memorandum supersedes the filing of April 5, 2007.

1

could not agree, Plaintiff requested a status conference to address the issue on March 15, 2007 (Docket no. 70).  This memorandum follows the order entered on March 22, 2007.

## Legal Standard

The Court "has broad discretion to make evidentiary rulings, including the power to exclude evidence that would unfairly prejudice an opposing party.  Gath v. M/A-COM, Inc., 440 Mass.482, 488 (Mass 2003)[citing: Nally v. Volkswagon of Am., Inc., 405 Mass.191, 197, 539 N.E.2d 1017 (1989)].  In a case involving spoliation, exclusion of evidence both sanction the party responsible for destroying certain evidence and remedies the unfairness that such spoliation created. Id., [citing Kippenhan v. Chaulk Servs., Inc.,  428 Mass. 124, 127, 697 N.E.2d 527 (1998); Fletcher v. Dorchester Mut. Ins. Co., 437 Mass 544,550, 773 N.E.2d 420 (2002)].

> The doctrine of spoliation allows a court to impose sanctions and remedies for the destruction of evidence in civil litigation, "based on the premise that a party who has negligently or intentionally lost or destroyed evidence known to be relevant for an upcoming legal proceeding should be held accountable for any unfair prejudice that results.
>
> Wiedmann v. Bradford Group, Inc., 444 Mass. 698, 705 (Mass. 2005) [citing Keene v. Brigham & Women's Hosp., Inc., 439 Mass. 223, 234, 786 N.E.2d 824 (Mass. 2003)].

## Summary of Uncontested Facts Relating to the Lost Tapes[2]

The incident giving rise to the complaint occurred on May 19, 2001.  The

---

[2] This Summary is presented for the purposes of this motion only.  The parties' pretrial memoranda sets forth those facts to be litigated.

Attleboro police obtained three videotapes during the early morning of May 20, 2001, and no receipt was left behind.  In August 2001, three additional tapes were turned over to the police.  Based on a request by Defendant AMSA, the police left a receipt behind.

On December 4, 2002, Ciambriello's counsel, David Ardito and Assistant District Attorney (ADA) Chris Abreu went to AMSA to view the tapes on AMSA's equipment.  They watch the tapes and both stayed approximately two hours.

Abreu testified at deposition that he believes he had the tapes with him when he left the facility on that date.[3]  However, written documentation obtained (letters and emails) indicate that the tapes were left at AMSA and/or AMSA had copies of the tapes.

AMSA maintained at the time and in this case that it has a receipt, and has essentially relied on that fact to support its contention that it could not have caused or contributed to the spoliation of the tapes, both legally and factually.

### Summary of Disputed Facts Relating to the Lost Tapes

AMSA maintains that the Abreu took the tapes with him when he left the premises.   AMSA's Branch Manager Jason Khoury claims that while the attorneys were viewing the video tapes, there was "absolutely no discussion while the attorneys were present about leaving the tapes with AMSA so that AMSA could make copies of the tapes."  However, according to Abreu's testimony, Khoury was not in the room.  In addition, Abreu testified that one of

---

[3] There is no reason to believe that Attorney Abreu's testimony will be different at trial.

3

the reasons why he would have left them behind was to make copies because AMSA was the only one who could make copies (at that time because of the special equipment required) and both he, and Attorney Ardito wanted copies.

Plaintiff learned for the first time that the tapes were destroyed during the investigation phase of her discrimination charge at MCAD. Under cover of April 24, 2003, MCAD sent Plaintiff's counsel interrogatories directed to Kiernan. Kiernan sought to stay the investigation and thus filed, through counsel, "Complainant's Application to Stay Investigation." Kiernan sought to stay the investigation until the completion of the criminal proceedings.

The Application was opposed, and in AMSA's opposition dated May 12, 2003 AMSA's counsel represented (and Plaintiff then learned for the first time) that the tapes were missing. However, it was represented "[t]he <u>prosecutors</u> have …. lost or misplaced the videotapes."

AMSA has insisted that it has a receipt and therefore, it could not have caused or contributed to the spoliation of the tapes.

### **What Plaintiff Contends is on the Lost Tapes**

The 3 tapes recovered have no audio. The missing tapes have audio. At least one witness (ADA Abreu) who viewed the tapes testified that as he viewed Plaintiff walking with Ciambriello into the room where she was heard saying "I'm not going in there" or "I do not want to go in there."

### **What AMSA Contends is on the Lost Tapes**

4

AMSA claims that Kiernan is heard saying "I do not want to go in there <u>now.</u>" [emphasis added].

### **What Ciambriello Contends is on the Lost Tapes**

Ciambriello has made no representations in Court pleadings as to what he contends is on these lost tapes. Ciambriello's counsel was not deposed in this case. However, it can be inferred that Ciambriello believes there is <u>no audio</u> on these tapes.

During his deposition, he was asked:

> Q. And while you were unlocking the door she didn't say I don't want to go in there or anything like that?
> A. No, she don't say nothing. [sic]
> Q. Prior to that time she didn't say, I don't want to go in there?
> A. No.
>
> Deposition of Francesco Ciambriello, April 7, 2005, p. 107-108.

> Q. And as I recall, because as you are testifying, she wanted to go in that room with you, right?
> A. Yes.
> Q. And at no time did she say to you I don't want to go in there?
>    ATTY. ROMANTZ:  Objection.
> A. No.
> Q. If she had said to you, I don't want to go in there, would it have been appropriate for you to go into that room with her?
>    ATTY. ROMANTZ:  Objection.
> A. No.
>
> Deposition of Francesco Ciambriello, April 7, 2005, p. 137.

If Ciambriello is correct, this means that the ADA Abreu and the Attleboro Police Detective are completely wrong (and not merely mistaken) about hearing any audio on the missing tapes.

5

## **THE EFFECT OF THE LOST TAPES**

The missing tapes are relevant to the issue of liability (i.e., what Defendants contend were consensual acts and Plaintiff contends was rape). If the jury determines that the acts were consensual or "welcome", Defendants prevail. If it is determined the sexual acts were not consensual, Defendant Ciambriello will be liable. The remaining issue will be whether Defendant AMSA can avoid liability based on the Faragher/Ellerth Affirmative Defense. See pp. 17, et seq. Docket no. 67, Memorandum and order on Defendant Argument Motor Service of America, Inc.'s Motion for Summary Judgment.

### 1.     The Defense of Consent

Ciambriello's testimony attempts to nullify what the Detective Otrando and the ADAs have testified and will continue to testify to: that Kiernan protested being taken into the room where the attack occurred, a fact confirmed on the audio of the missing tape. If the tape had not been lost, Ciambriello's deposition testimony could be perceived by a fact finder as utterly delusional, especially since he'd be not only directly contradicting the testimony of a detective and an ADA, but because the tapes would clearly demonstrate that he is lying. Yet now he can maintain that it was Kiernan's idea to go into the room without the independent and unequivocal contradiction of the video tape and the sounds of her verbal protests.

**2.    Credibility**

Without the tapes, the issue of consent now turns into a "she said/he said" scenario. As a result, Defendants have come up with a list of issues that they believe call into question Plaintiff's credibility, which includes, but is not limited to:

a. Plaintiff left her home at 9:00 am on May 19, 2001, but did not arrive at work until 3:00 pm. See Joint Pretrial Memorandum (JPTM), p. 7;

b. Plaintiff was having an extra marital affair with a co-worker (not Ciambriello), or was at least not faithful to her husband at that time based on an "amorous email" claimed to have been written by Plaintiff to an AMSA co-worker; JPTM p. 12;

c. Plaintiff made plans to socialize with her friend after work, even though she was a new mother with an infant. See JPTM, p. 7;

d. Plaintiff complained that her shoulder hurt and asked Ciambriello to massage it. See JPTM, p. 8;

e. When Plaintiff went to a Rape Crisis Center they purportedly documented that she indicated a history of domestic violence, and made no notes about the rape. JPTM, p. 12.

**3.    What was said and how?**

Without the tapes, Defendants have added one word: "now" to the end of "I do not want to go in there." The adding of this seeming innocuous word creates

the impression that the speaker (namely, the Plaintiff) might want to go in to the room another time. It supports Ciambriello's defense. Without the tape, the Defendants have reinterpreted the audio in an effort to dispel any notion that the attack was not consensual.

## PROPOSED REMEDIES

Before an appropriate sanction can be imposed, the court must make a determination of "when the defendant's duty to preserve evidence was triggered." E*Trade Secs.LLC v. Deutsche Bank AG, 230 F.R.D. 582, 587 (D. Minn 2005). Plaintiff believes that there are no disputed facts on this issue (although there are disputed facts on the issue of destruction). "The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation." See Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 746 (8th Cir. 2004); see also Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). Id., at 588 (D. Minn. 2005).

The evidence in this case has shown (and will show at trial) that within weeks of the attack, Plaintiff retained counsel for the purposes of pursing a workers compensation claim. AMSA was contesting liability (and indeed, resolved the claim without accepting liability). Records subpoenaed by the Hartford Insurance Company (which have also been subpoenaed for trial) confirm that AMSA was concerned over liability. Despite this, they made no efforts to copy the tapes they had, or seek copies of the tapes they already surrendered to the police. Accordingly, Plaintiff contends that the duty arose

shortly after the incident.

In addition, the AMSA contends that it terminated Ciambriello because he left the vault unattended. He was not terminated for the attack. He was suspended the day after the attack, and terminated the day after his arrest. Again, not for the attack, but for a violation of company policy. Plaintiff maintains that he was terminated for the attack. There was no investigation conducted as to the alleged violation of company policy, and AMSA's use of that excuse rather than acknowledging the attack indicates it was concerned about liability.

However, if the Court rules as a matter of law that the duty did not arise at that time, then there is question as to whether it arose at another time: when the tapes were back on the premises on December 4, 2002. A proper determination requires jury consideration of disputed facts and a determination whether it is more probable than not that the tapes were left at AMSA (either negligently or intentionally by the ADA), and whether AMSA destroyed the tapes and relief merely on a receipt.

If the Court rules as a matter of law that the duty to preserve evidence <u>did</u> arise within a few weeks of the incident, the jury still needs to consider these same disputed facts to determine whether the evidence was intentionally destroyed on December 4, 2002.

Whatever the jury can consider, the bottom line is that this important evidence is missing. In an effort to address the prejudice, the Plaintiff proposes the following:

**1. Trial Procedure Modification**

As the Court has ruled out bifurcation, the Plaintiff recommends a variety of modifications to the trial procedure:

    **a.** In his opening statement, the Plaintiff shall be permitted to comment on the loss of the tapes, letting the jury know that in addition to the main claims (violations of c. 151B and Title VII), they will be considering the circumstances surrounding the loss of the tapes, among other important facts;

    **b.** Plaintiff may elicit from any trial witness the circumstances surrounding the loss of the tapes;

    **c.** Plaintiff may elicit testimony from any trial witnesses as to what they observed on the tapes, or what were told was observed on the tapes.

    **d.** In his closing argument, the Plaintiff shall be permitted to argue all facts concerning the lost tapes, including but not limited to:

        i. Facts supporting the duty to preserve;

        ii. Facts supporting when the duty arose;

        iii. Facts addressing the custody and possession of the tapes;

        iv. And reasonably inferences where the tapes could have ended up.

    **e.** And unless otherwise permitted by custom or procedure, permit the Plaintiff to present a brief rebuttal closing argument,

following that of the Defendants'.

### 2. Jury Instructions[4]

#### a. Default Judgment Instruction

If the jury were to find that the Defendant AMSA intentionally or negligently caused the destruction or loss of the missing tapes, default is an appropriate remedy for the jury to consider.  Alternatively, interrogatories could be sent to the jury with the default ruling to come from the Court, based on the responses to those interrogatories.  See e.g. Keene v. Brghan & Women's Hosp., Inc., 439 Mass. 223, 234 (Mass.2003) ("The doctrine is based on the premise that a party who has negligently or intentionally lost or destroyed evidence known to be relevant for an upcoming legal proceeding should be held accountable for any unfair prejudice that results.").  Indeed, if the jury finds that the Defendant AMSA's conduct was so egregious, an entry of judgment on liability would be warranted.  See e.g. Kelley v. United Airlines, 176 F.R.D. 422, 428 (D. Mass 1997).

#### b. Adverse Inference Instruction: Liability

"A party that seeks an adverse inference instruction for destruction … of evidence must show that: (i) the party having control over the evidence had an obligation to preserve or timely produce it; (ii) the party that destroyed or failed to timely produce evidence had a 'culpable state of mind'; and (iii) the missing… evidence is 'relevant' to the party's claim or defense 'such that a reasonable trier

---

[4] Plaintiff will submit proposed jury instructions in accordance with the Court's pretrial order of November 14, 2004.

11

of fact could find that it would support that claim or defense.'"  Gordon Partners, et. al. v. Blumenthal (In re NTL, Inc. Sec. Litig.), 2007 U.S. Dist. LEXIS 6198, 48-49 (S.D.N.Y. 2007) [citing Phoenix Four, Inc. v. Strategic Res. Corp., 05 Civ. 4837, 2006 U.S. Dist. LEXIS 34268, 2006 WL 1409413 at * 4 (S.D.N.Y. May 23, 2006) (quoting Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002))].

In this case, whether AMSA had control over the tapes at any time after the police took them and left a receipt is a question of fact (although AMSA did have control of at least three tapes after May 20, 2001).  Testimony and documentary evidence supports the theory that the tapes were left at AMSA on December 4, 2002.

What goes to show AMSA's 'culpable state of mind' is the posture taken by AMSA: the continued reliance on a receipt without acknowledging that the tapes were at some point back on its premises, and even in the hands of its Director of Security in December 2002.

This an adverse inference instruction is, at a minimum, required.  Kelley v. United Airlines, 176 F.R.D. 422, 428 (D. Mass 1997).

### c. Adverse Inference Instruction: Damages

If the jury were to determine that AMSA was responsible for the missing tapes, the jury could also reasonably infer that it knew that the evidence would hurt its ability to present the defenses it now presents.  "A plaintiff suing under Title VII may be awarded punitive damages if the employed engaged in

discriminatory practices with malice <u>or with reckless indifference to the plaintiff's federally protected rights</u>".  See <u>Harsco Corp. v. Renner</u>, 475 F.3d 1179, 1189 (10th Cir. 2007) [emphasis added].

Had Ciambriello been convicted of rape at his criminal trial, or even assault and battery, the issue of consent would be effectively barred from litigation in this case.  However, Faragher/Ellerth would still be available <u>unless the Defendant knew that Ciambriello was a supervisor for the purposes of Faragher/Ellerth.</u>

In this case, whether Ciambriello was a supervisor turns on Kiernan's "mistaken conclusion [that Ciambriello was her supervisor was a] reasonable one."  See pp. 16, et seq. Docket no. 67, Memorandum and order on Defendant Argument Motor Service of America, Inc.'s Motion for Summary Judgment [citations omitted].  If Ciambriello is found to be a supervisor, AMSA is still liable under Mass.Gen.L. c. 151B.  See <u>Id.</u>, p. 17, fn 3.

But the analysis cannot end there.  Because of this missing evidence, the Defendants have attacked this Plaintiff's credibility.  Plaintiff has had to endure false innuendo and false accusations.  The evidence will show that she grossly underestimated the toll this process would take on her, and the evidence will show that all of it pushed her life into a downward spiral.  Certainly, as the Defendants have pointed out in their pretrial memoranda, they will argue that the Plaintiff's life was already in a downward spiral.  Yet with all of the facts and with the reasonable inferences to make from these facts, the jury could conclude that because the evidence was compromised, AMSA saw it as a weakness in

Plaintiff's case. A jury should be free to consider if, by causing the spoliation of the tapes, AMSA only furthered the vicious attack of her weekend supervisor.

Accordingly, if a jury were to find that the evidence was intentionally destroyed by AMSA, then the jury should be free to consider whether AMSA showed a reckless and callous disregard for her Plaintiff's civil rights, and therefore an instruction to award punitive damages.

                                                Respectfully submitted:
                                                HEATHER KIERNAN

DATED:      April 9, 2007

                                                /s/ William J. McLeod
                                                William J. McLeod, BBO 560572
                                                McLEOD LAW OFFICES, PC
                                                77 Franklin Street
                                                Boston, MA  02110
                                                617.542.2956/phone
                                                617.695.2778/fax
                                                wjm@mcleodlawoffices.com

## CERTIFICATE OF SERVICE

In accordance with the rules of this Court, I hereby certify today, April 9, 2007, that I caused a true copy of this document and all exhibits and attachments to be served on all parties listed below, who are participants in the Court's ECF program:

        David Ardito, counsel for Ciambriello
        Allison Romantz, counsel for AMSA

                                                /s/ William J. McLeod
                                                William J. McLeod