UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS AT BOSTON

HEATHER KIERNAN,

Plaintiff,

-v- CIVIL NO. 04-10131 RBC

ARMORED MOTOR SERVICE OF AMERICA, INC., and FRANCESCO CIAMBRIELLO

Defendants.

**PLAINTIFF HEATHER KIERNAN'S**
**CONSOLIDATED MOTIONS IN LIMINE**

**1. To exclude the *Aetna Casualty v. Niziolek* defense and to exclude the testimony of Ellen Ciambriello.**

**Background**

Ciambriello plead guilty to assault in state court after a jury acquitted him of rape, but was hung on the issue of assault and battery. In an effort to persuade the fact finder that Ciambriello's guilty plea was not an admission, Defendants intend to rely on the defenses enumerated in Aetna Casualty v. Niziolek, 395 Mass 737, 481 N.E.2d. 1356 (1985). In that case, the Supreme Judicial Court held that plea of guilty has "no preclusive effect in civil litigation." Id., at 750, 481 N.E.2d at 1364. In other words, while the plea is an admission, it is not conclusive. Id., at 747, 481 N.E.2d at 1363.

Essentially, the Defendants will present facts that support the theory that the Defendant Ciambriello's finances were the reasons why the plea was entered. Plaintiff seeks to exclude all evidence of this "defense."[1]

On December 16, 2005, the Plaintiff sought to reopen the deposition of Defendant Ciambriello based on this defense. In support of the motion, the Plaintiff represented that (1) nothing in the Defendant Ciambriello's mandatory disclosures suggested that this was a defense in this case (see Motion, Docket no. 54, ¶ 6); and (2) the Plaintiff has no reason to suspect that the Defendant Ciambriello's finances were a germane issue in this case (Id., ¶ 7).

After a hearing on September 29, 2006, wherein both Defendants were in represented[2] the court permitted the inquiry into Mr. Ciambriello's finances by issuing the following order:

> In the exercise of my discretion, the Court shall allow the deposition of defendant Ciambriello to be reopened only on the issue of reasons for defendant Ciambriello pleading guilty other than the fact of guilt. Defendant Ciambriello shall bring with him to the deposition all records of payments made to his attorney for representing him in the criminal case and records of any money still owed the attorney for representing him in the criminal case. The request for "all document concerning assets and liabilities, income and expenses, from May 18, 2001 through November 30, 2003 is DENIED without prejudice as overbroad. If as a result of the reopened deposition, any documents respecting personal finances appear to be of particular relevance, plaintiff's counsel may renew the request.

[1] There is nothing in either Defendants' pretrial memoranda addressing this as an issue to be litigated at trial. The only defense mentioned in their respective memoranda is the issue of consent (along with AMSA's other Title VII and c. 151B defenses). However, Plaintiff has no reason to suspect that either party has abandoned this defense.

[2] Ciambriello's counsel participated by telephone.

A notice of deposition was sent to all parties on October 3, 2006 to confirm the parties' arrangement that the deposition take place on October 12, 2006 at 10:00 am. The notice specifically referred to the Court's September 29, 2006 order and specifically called on the Defendant Ciambriello to "bring with him all documents described in that order." See Notice of Deposition, Exhibit A. No objection to the Notice of Deposition was conveyed.

After inquiry, it was determined that despite an order, and despite a notice of deposition, neither the Defendant Ciambriello nor his counsel brought any documents to the deposition. During one of the breaks, Mr. Ardito contacted his office and one document was faxed (a retainer agreement). See Exhibit B.

At this deposition, Mr. Ciambriello proffered a lack of knowledge on virtually all aspects of his household finances even though Mr. Ciambriello had to refinance his home twice in order to afford the trial. Mr. Ciambriello essentially testified that his wife handled all aspects of the finances. It was Mrs. Ciambriello who:

1. Paid Mr. Ardito; Deposition of Ellen Ciambriello, p. 10;
2. Hired Mr. Ardito; Id., p. 23;
3. Handled all money issues with Mr. Ardito; Id, p. 26-27;
4. Gave the Defendant the money to pay his witness and probation fees; Id., p. 52
5. Handles the joint finances; Id., p. 53

And Mr. Ciambriello cannot testify:

1. How his wife paid Mr. Ardito; Id., p. 26.
2. Where the money came from to pay Mr. Ardito; Id., p. 33.

After his deposition was suspended, the Defendant Ciambriello agreed that they would produce all documents concerning their refinancing of the home.

After receipt of those documents, Mrs. Ciambriello's deposition was scheduled. That deposition took place on March 2, 2007. Mrs. Ciambriello testified that she refinanced the home she owns with Mr. Ciambriello twice. The first refinance occurred shortly after the arrest, and the second before the trial (June 2001 and June 2003). Deposition, p. 21. She also testified that she was the main person in the household handling the refinancing. Id., p. 7. In addition, the following question was asked:

> Q. Okay. And what discussions did you have with your husband concerning proceeding with the second trial?
>
> MS. ROMANTZ: Occasion.
> MR. ARDITO: I'll object.
> MR. MCLEOD: Okay.
> MR. ARDITO: Privileged.
> MS. ROMANTZ: I would instruct her not to answer.
> MR. ARDITO: It's privileged.
> MR. MCLEOD: I -- I -- I actually think -- I'm not sure it's privileged. I had -- I had this discussion once in another deposition. It might be subject to a disqualification, but it also raises -- it also goes to the defense that Mr. Ciambriel[lo] Mr. Ciambriello intends to raise as to why he pled guilty to the offense, which as I understand and it has been -- it has been represented to the Court, that it's because he couldn't afford it.
> MR. ARDITO: I don't --
> MS. ROMANTZ: I'm gonna -- I'm gonna object to that representation --
> MR. ARDITO: Representation.
> MS. ROMANTZ: -- to that representation that, that has been the representation as to the Court, because I believe that's a misstatement.[3] Do you have any case law

[3] Plaintiff respectfully suggests that there was no misrepresentation on the record. Paragraph 3 of the Plaintiff's motion (Docket no. 54) states "Upon information and belief, Ciambriello will testify that (1) he could not afford a second trial; and (2) he was advised to do so by counsel."

that shows that it is a waiveable privilege?
MR. MCLEOD: If -- if they want to maintain that the family unit could not afford or financial considerations factor into the plea, I respectfully suggest that this is all entirely relevant and open for discovery.
MS. ROMANTZ: I don't -- I just -- I just disagree.
MR. ARDITO: I disagree. That's --
MR. MCLEOD: Are you instructing her not to answer?
MR. ARDITO: I am.

Deposition, pp. 29-20.

And continuing on:

[Q.] Were funds paid over to Mr. Ardito of over an above that which is reflected on Exhibit 1 and was marked on October12th, of 2006?
A. No.
Q. Why?
A. Because we weren't gonna have another trial.
Q. Why?
A. Well, my husband and I decided --
MR. ARDITO: No, you don't have -- just answer his question he's asking you.
A. Well, financially and emotionally I didn't wanna to go through that again.

Id., 30-31.

This issue is governed by Rule 501 of the Federal Rules of Evidence. See Fed.R.Evid. 501, which reads:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with

Additionally, on p. 30 of his reconvened deposition Mr. Ciambriello was asked "Q…And is that why you plead guilty was because you couldn't afford another $25,000? A. Correct, yes."

> respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.
>
> Fed.R.Evid. 501 [emphasis added].

Evidently, the Defendant Ciambriello has no personal knowledge of the financial considerations that forced him to take a plea deal.

**Argument**

Ciambriello's (and one of AMSA's) defense rests on state law. Massachusetts state law precludes one spouse from testifying about private conversations with the other. See Mass.Gen.L. c. 233, § 20. However, it is not a rule of privilege but rather it is a rule of disqualification. Mrs. Ciambriello cannot testify in this matter even if both Defendants wish her testimony to be received by the jury. See Kaye v. Newhall, 356 Mass 300, 304, 249 N.E.2d 583, 585 (Mass 1969) [citing Commonwealth v. Cronin, 185 Mass. 96, 69 N.E. 1065 (Mass.1904); Sherry v. Moore, 265 Mass. 189, 163 N.E. 906 (Mass. 1928); Leach and Liacos, Handbook of Massachusetts Evidence 139-141.

The Defendant Ciambriello's testimony is what it is. He effectively testified that the reasons why he plead guilty were because he could not afford a second trial. However, when asked about the finances, he consistently referred to his wife who controls the finances. He has no personal knowledge of the family finances. Because of the disqualification and because of his lack of personal knowledge and because there is no evidence to support the Aetna Casualty v. Niziolek, defense, the Defendants cannot rely on it. Accordingly, all evidence relating to that defense must be excluded.

**2. To exclude any evidence of the Plaintiff's prior criminal charges and her prior inconsistent testimony**

The Defendants intend to put forward evidence of the Plaintiff's theft of money from a previous employer. This evidence can take the form of documents and testimony from witnesses (namely, the Plaintiff and her now ex-husband, among potentially others). This evidence is not admissible pursuant to Fed.R.Evid. 609 and 403 and should not be allowed at all.

In December 2000, the Plaintiff stole money from her employer and was charged with larceny. An application for criminal complaint, intended to be used by the Defendants, confirms two counts (two counts of larceny) against the Plaintiff. Of those charges, one was dismissed, and the second charge was continued without a finding. For the purposes of Fed.R.Evid. 609, neither charge is admissible in this case. See also LeBon v. United States, 899 F.Supp. 722, 730 (D.Mass 1995).

Plaintiff admittedly lied in her deposition about the criminal charges. This forced the reconvening of her deposition for the purposes of inquiring further into this incident. This evidence of the criminal charge is highly prejudicial, and not remotely relevant to the issues to be decided by the fact-finder. However, the fact that she lied about it at her deposition is relevant for the purposes of the Defendants' credibility arguments. The problem here is that "its probative value is substantially outweighed by the danger of unfair prejudice…." See e.g. Diaz v. Cianci, 737 F.2d 138, 139 (1st Cir. 1984). Pursuant to Fed.R.Evid. 403, the

evidence of her prior inconsistent testimony should be excluded.

**3. <u>To exclude the testimony of Michael Bucci and Cathy Dowler</u>**

Defendants have expressed their intention to call former AMSA owner Michael Bucci and a former Human Resouces employee to help establish the organizational structure of AMSA, HR policies and procedures, as well as provide testimony relative to the Defendants' claim that Ciambriello was not a supervisor for the purposes of Title VII. This evidence is redundant.

Both Jason Khoury, the Branch Manager, and Edward O'Brien, the Director of Security can testify as to their organizational structure of the Attleboro branch, as well as Mr. Ciambriello's job duties, responsibilities and title. There is no evidence that Mr. Bucci had any responsibility of oversight on the day to day operations of the facility. His testimony would offer nothing substantive, and would effectively be rubberstamping the testimony proffered by witnesses who were closer to the time, place, people and events in question. There is also no evidence that Ms. Dowler had any role in anything to do with the time, place, people and events in question.

> Witnesses [cannot] be permitted to simply summary the facts and the depositions of others. Such testimony comes "dangerously close to usurping the jury's function" and "implicates Rule 403 as a 'needless presentation of cumulative evidence' and 'a waste of time.'"
>
> <u>Crowley v. Chait,</u> 322 F. Supp. 2d 530, 553 (D.N.J. 2004)[citing <u>United States v. Dukagjini</u>, 326 F.3d 45, 54 (2nd Cir,. 2003).

Accordingly, their testimony should be excluded under Fed..Evid. 403.

**4. To exclude any evidence concerning the Care and Protection Proceedings and Divorce Proceedings between John Kiernan and Heather Kiernan**

Defendants seek to introduce evidence concerning the subsequent Care and Protection Proceeding and Divorce Proceedings between the Plaintiff and her now ex-husband. The affidavits create a myriad of factual issues that are not germane, and will only confuse the jury.

After the incident, the Plaintiff's marriage disintegrated. For a period of time, the Plaintiff was residing in a women's shelter. The parties did reconcile for brief periods. However, they ultimately divorced last year.[4]

As is unfortunately common place in many domestic relations matters, the affidavits submitted are riddled with personal attacks. These attacks, some of which are preposterous, may confuse a jury and distract them far away from the events that give rise to this case. Accordingly, all of that testimony and documentary evidence concerning the divorce and the related care and custody proceedings should be excluded pursuant to Fed.R.Evid. 403.

**5. To exclude the "Valuing and Respecting Each Other" training Video**

Plaintiff seeks to exclude this evidence on the grounds that it was never disclosed or identified in any mandatory disclosure as required by Rule 26. The existence of the tape was not made known to the Plaintiff until the parties began preparation of the pretrial memorandum. Pursuant to Fed.R.Civ.P. 37(c)(1), the evidence should be excluded.

[4] Plaintiff makes no claim in her complaint that her marriage ended because of the Defendants' actions.

**6. Documents**

In this motion Plaintiff addresses the objections cited by AMSA to her proposed exhibits.

**a. Emergency Room records (Sturdy); AMSA: We will agree to let in but only if the Court will give a limiting instruction**

As a limiting instruction has not been proposed, Plaintiff expressly reserves her objection to any proposed limiting instruction.

**b. Arrest report: Attleboro Police Department dated 5/22/2001; AMSA: We object to the many hearsay statements within the document. We would want all hearsay statements to be redacted before agreeing to have this document enter into evidence.**

The arrest report contains a number of admissions from the Defendant Ciambriello as well as the Plaintiff. In addition, the report contains a number of references to observations as well as statements by witnesses. The author of the document will be present to testify that he prepared it. It is Detective Otrando's arrest report. In addition, the document was obtained from the Attleboro Police Department as a business record, and is admissible pursuant to Fed.R.Evid. 803(6). In addition, the document is not being introduced for the truth of the matter asserted, but to "show the effect the statements had on the officers." Woods v. City of Chicago, 234 F.3d 979, 986 (7th Cir. 2000). As the Defendant Ciambriello raises the issue that he is innocent despite being arrested, charged, indicated, and them ultimately pleading to a lesser charge, this document is relevant for this purpose.

**c. Letter dated 3/18/2003 from Jeanne Veenstra to David Ardito; AMSA: Objection/Multiple levels of Hearsay/lack of foundation**

The letter is not being offered to prove the truth of the matter asserted, by the state of mind of the recipient, in this case, Defense Attorney David Ardito. There is no evidence in this case that Attorney Ardito disputed the following statement: "As I had previously informed you, former assistant district attorney Abrue has indicated that he did not take any tales when he left AMSA. You indicated that you didn't see him leave with any tapes. You indicated that you didn't take the tapes from AMSA." The author of the letter and the recipient will be on hand to testify as to the contents of that letter. This letter was filed in support of the Plaintiff's Motion for Sanctions for Spoliation of Evidence. At no time did the Defendant object to this letter as evidentiary consideration for the Motion for Sanctions for Spoliation of Evidence, nor was any evidence proffered in response to show that the accusation was responded to. The Plaintiff maintains that the failure to deny this accusation is effectively an adoptive admission. See Fed.R.Evid. 801(d)(2)(A) and (B).

**d. Complainant Heather Kiernan's Application to Stay Investigation (MCAD) dated 5/2/2003; AMSA: Objection/Relevance/Hearsay[5]**

The purpose of this exhibit is to demonstrate when the Plaintiff first became aware of the missing tapes and goes to the issue of spoliation. It addresses the Plaintiff's state of mind.

[5] The parties are attempting to resolve the issues concerning the MCAD documents via a stipulation.

e. **Respondent AMSA's Opposition to Complainant's Application to Stay Investigation dated 5/12/2003; AMSA: Objection/Relevance/Hearsay**

f. **Complainant Heather Kiernan's Supplemental Statement in Support of Her Application to Stay Investigation dated May 19, 2003; AMSA: Objection/Relevance/Hearsay**

g. **Respondent's Supplemental Opposition to Complainant's Application to Stay Investigation dated May 21, 2003; AMSA: Objection/Relevance/Hearsay**

These documents go to the issue of spoliation. The purpose of this exhibit is to demonstrate that Defendant relied solely on the receipt left by Detective Otrando. It also demonstrates that at that time the Defendant AMSA did not acknowledge that the tapes were back on the premises. In Kiernan's Supplemental Statement it is represented that Counsel contacted the DA's office and was advised that it was AMSA "who had control over the tape [and] is responsible for losing/destroying it." In their response to the Supplemental Statement, AMSA states that the "accusations are nothing more than <u>fanciful thinking on the part of Complainant and/or her counsel</u>…" [emphasis added] .

AMSA did not respond to the claim that Complainant's counsel was told of by the DA that AMSA was responsible for losing the tapes. Instead, they attacked Kiernan and/or her counsel. They relied solely on the receipt. A reasonable inference can be made that the reliance on the receipt, and the failure to admit that the tapes were on the premises indicates that AMSA did not want those tapes found. The silence of the AMSA is effectively an admission.

See Fed.R.Evid. 801(d)(2)(A) and (B). Alternatively, the documents are business records of activity and fall within the hearsay exception, Fed.R.Evid. 803(6).

**h. Records from the Hartford Insurance Company with affidavit dated 3/28/2005; AMSA: object to pages 2-7, 9, 11-16, 18/Hearsay, Relevance and Prejudicial**

The Keeper of Records from the Hartford Fire Insurance Company will be on hand to present testimony that these records are business records and thus admissible under Fed.R.Evid. 803(6). Even if the exception to the hearsay rule does not apply, the records are not being introduced to show the truth of the matter asserted, but are being used to show the state of mind of AMSA during the time period reflected on the records, namely, that AMSA was concerned about liability for the incident. AMSA's concern for liability is relevant for the purposes of establishing spoliation, and when the duty arose to preserve evidence. Any concern of prejudice could be remedied by a curative instruction, assuming the prejudice is articulated.

**i. Emails from DA's office dated June 17, 2002 and June 13, 2002; AMSA: Objection/Hearsay to the email from Abreu dated June 17, 2002.[6]**

The email is a business record and admissible pursuant to Fed.R.Evid. 803(6) (Mr. Abreu will be present to testify). It is also admissible pursuant to Fed.R.Evid. 803(1) (Present sense impression at that time); and Fed.R.Evid. 803(5) (Recorded recollection). Even if it were not admissible as an exception to the hearsay rule, the email from Mr. Abreu describes his state of mind in June of

[6] The pretrial memorandum incorrectly identifies the date as being July 17, 2003.

2003. Defendants are free to cross-examine on his state of mind when he wrote this email.

**CONCLUSION**

For all of the foregoing reasons, the Plaintiff respectfully requests that her Motion for Sanctions be GRANTED or in the alternative, that the issue of spoliation be bifurcated.

Respectfully submitted:
HEATHER KIERNAN

DATED: March 14, 2006

/s/ William J. McLeod

William J. McLeod, BBO No. 560572
McLEOD LAW OFFICES, PC
77 Franklin Street
Boston, MA 02110
617.542.2956/phone
617.695.2778/fax
wjm@mcleodlawoffices.com

Certificate of service

In accordance with the rules of this Court, I hereby certify today, March 14, 2006, that I caused a true copy of this document and all exhibits and attachments to be served on all parties listed below, who are participants in the Court's ECF program:

David Ardito, counsel for Ciambriello
Allison Romantz, counsel for AMSA

/s/ William J. McLeod
William J. McLeod