UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS AT BOSTON

_____

HEATHER KIERNAN,

    Plaintiff,

-v-                                      CIVIL NO. 04-10131 RBC

ARMORED MOTOR SERVICE OF
AMERICA, INC., and
FRANCESCO CIAMBRIELLO

    Defendants.

_____

**PLAINTIFF HEATHER KIERNAN'S MEMORANDUM OF LAW
IN SUPPORT OF THE ADMISSIBILITY AT TRIAL
OF THE POLICE REPORT OF DETECTIVE OTRANDO**

**I.**    **Introduction**

Pursuant to the Court's request[1], the Plaintiff submits a memorandum of law stating the basis for admitting statements contained in the arrest report created by Detective John Otrando of the Attleboro Police Department on May 22, 2001 and the basis for admitting into evidence the report itself. The police report is admissible pursuant to Fed.R.Evid 803(6), the business records exception and Fed.R.Evid 803(8), the public records exception. Statements made by those other than Detective Otrando contained within the arrest report are admissible pursuant to various hearsay exceptions. Statements of observation made by Detective Otrando are admissible themselves under Fed.R.Evid 803(6) as they were made in the regular course of business of

---

[1] See Electronic Clerk's Notes for Proceedings held before Judge Robert B. Collings held on 4/27/2007.

1

creating the arrest report.  The statements of Francesco Ciambriello contained within the arrest report are admissible pursuant to Fed.R.Evid. 801(d)(2)(A).  The statements of Heather Kiernan are admissible pursuant to Fed.R.Evid. 801d(1)(B).

## II.   The Admissibility of the Arrest Report and Otrando's Observations

The factors which govern the reliability and admissibility of investigatory reports under Federal Rule of Evidence 803(8)(C) have been held to also govern the admissibility of police investigatory reports offered for admission as business records under Federal Rule of Evidence 803(6).  See Cullen v. Mattaliano, 1991 U.S. App. LEXIS 32852 (1st Cir. 1991) [citing United States v. Oates, 560 F.2d 45, 68-84 (2nd Cir. 1977)].  Exhibit A.  The admissibility of an investigatory report depends on a number of factors, including the availability of the declarant, "the timeliness of the investigation;… the investigator's skill and experience; [and] whether a hearing was held…" Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167 (1988).

In this case, Otrando's arrest report was the result of an extensive investigation which included the interviewing of witnesses, the Defendant Ciambriello and other police officers who responded to the scene, as well as hospital personnel, and the victim/Plaintiff.[2]  During the relevant time period, Otrando was a Detective with the Attleboro Police Department with extensive experience in law enforcement and investigations.  There are no indicia of a lack

---

[2] Lt. Otrando will be present to testify at the evidentiary hearing and at the trial.  Plaintiff has no objection to the evidentiary hearing being extended to lay the appropriate foundation for the admissibility of the Arrest Report at trial.

of trustworthiness of the report and is admissible under Federal Rules of Evidence 803(6) and 803(8).

Statements contained in a report that are statements of the officer as to what he himself saw or observed with his own senses at the time of the investigation and as to which he is competent to testify to at trial are admissible. See <u>Kelly v. O'Neil, 1 Mass. App. Ct. 313, (1973)</u> and <u>Adoption of Paula, 420 Mass. 716 (1995)</u>. For example, on p. 3 of the report, Otrando notes his observations from his viewing of the video tapes: "…it also appears that he is very close to her and immediately behind her. Kiernan is then directed into the back office and the door closes." On page 6, he describes his interview with Ciambriello and notes "that all during the interview Ciambriello appeared nervous and evasive in the answering of the questions that were presented to him." Detective Otrando's own statement of observation is admissible.

### III.   Hearsay Statements Contained Within Police Report

**A. Ciambriello's Statements**

Ciambriello's statements made to Detective Otrando are admissible under Fed.R,Evid. 801(d)(2)(A), as they are admissions by a party opponent and is the party's own statement. On page 6 of the arrest report, Ciambriello told Detective Otrando "are you gonna arrest me, go-ahead lock me up." This statement is admissible because it is an admission by Ciambriello, a party-opponent.

3

### B. Heather Kiernan's Statements

Heather Kiernan's statements to Detective Otrando are admissible pursuant to Fed.R.Evid. 801(d)(1)(B), as they will be consistent with Heather's testimony at trial. Throughout the course of litigation, Defendant AMSA and Defendant Ciambriello have attempted to show that Heather Kiernan has lied in her pleadings and at her deposition. At the criminal trial, much of the Defendant's cross-examination of the Plaintiff addressed alleged inconsistent statements. It is the Plaintiff's position that the Defendants in this case will pursue such a strategy.

When the opposing party opens the door by accusing fabrication, a police report is admissible to show prior consistent statements. <u>United States v. Arias-Santana, 964 F.2d 1262 (1st Cir. 1992).</u> The statements made by her to Detective Otrando contained in the arrest report will be consistent with her testimony at trial and offered to rebut both the express and implied charges against her of fabricating her story. Fed.R.Evid. 801(d)(1)(B).

### C. Christina Parrot's & Michael Pascetta's Statements

Plaintiff has no objection to those statements being redacted or the jury being instructed not to consider them provided the Defendants do not attempt to claim that the statement is inconsistent with other testimony.

## IV.   Conclusion

For all of these reasons, the Plaintiff respectfully requests that the Arrest Report of Detective John Otrando be admitted into evidence.

                                        Respectfully submitted:
                                        HEATHER KIERNAN
DATED:   May 2, 2007

                                        /s/  William J. McLeod
                                        William J. McLeod, BBO No. 560572
                                        McLEOD LAW OFFICES, PC
                                        77 Franklin Street
                                        Boston, MA  02110
                                        617.542.2956/phone
                                        617.695.2778/fax
                                        wjm@mcleodlawoffices.com

### Certificate of service

In accordance with the rules of this Court, I hereby certify today, May 2, 2007, that I caused a true copy of this document and all exhibits and attachments to be served on all parties listed below, who are participants in the Court's ECF program:

   David Ardito, counsel for Ciambriello
   Allison Romantz, counsel for AMSA
   Laurence J. Donoghue, counsel for AMSA
   Robert P. Joy, counsel for AMSA

                                        /s/  William J. McLeod
                                        William J. McLeod

LEXSEE 1991 US APP LEXIS 32852


Analysis
As of: May 02, 2007

**FRANCIS CULLEN, Plaintiff, Appellant, v. GERARD MATTALIANO, ETC., ET AL., Defendants, Appellees.**

**No. 91-1446**

**UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**

*1991 U.S. App. LEXIS 32852*

**December 31, 1991, Decided**

**NOTICE:** [*1] RULES OF THE FIRST CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported as Table Case at *953 F.2d 634, 1991 U.S. App. LEXIS 32964*.

**PRIOR HISTORY:** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS. Hon. William G. Young, U.S. District Judge

**DISPOSITION:** Affirmed

**COUNSEL:** Francis E. Cullen, Jr. on brief pro se.

John P. Flynn, Town Counsel, and Murphy, Hesse, Toomey and Lehane, on brief for appellees.

**JUDGES:** Before Campbell, Torruella and Cyr, Circuit Judges.

**OPINION BY:** PER CURIAM

**OPINION**

*Per Curiam. Pro se* plaintiff-appellant Francis Cullen filed suit on October 23, 1985 against defendants-appellees Gerard Mattaliano, the Milton chief of police, David MacDonald, a Milton police lieutenant, and Michael Breen, a Milton police officer, alleging breach of federal civil rights and state-law assault and battery. Cullen then filed amended complaints adding defendants-appellees the Town of Milton and Joseph Gaughan, Paul Nolan, and Charles Paris, all Milton police officers, and adding claims for false arrest, malicious prosecution, and intentional infliction of emotional distress. On May 11, 1988, the district court granted a motion to dismiss filed by Gaughan, Nolan, and Paris. On [*2] June 2, 1988, the district court granted motions for summary judgment filed by Mattaliano, MacDonald, and the Town of Milton. The district court also granted Breen's motion for summary judgment as to Cullen's claims of false arrest and malicious prosecution against Breen. The district court denied Breen's motion for summary judgment as to Cullen's claim that Breen had used unjustified and excessive force while arresting him.

Subsequently, on December 26, 1990, Cullen filed an amended complaint against Breen stating three claims: (1) that Breen had violated Cullen's federal constitutional rights by using unjustified and excessive force in arresting him; (2) that Breen's actions violated the Massachusetts Civil Rights Act; and (3) that Breen's actions violated Cullen's right to be free of intentionally

inflicted emotional distress.

During a jury trial in February 1991, the district court directed a verdict for Breen on the second and third claims listed above. On February 19, 1991, the jury returned a verdict for Breen on Cullen's first claim listed above, and a verdict for Cullen on Breen's counterclaim for assault and battery. The district court on April 27, 1991 denied Cullen's *Fed.* [*3] *R. Civ. P. 59(a)* motion for a new trial. On April 29, 1991, the district judge sent a copy of the transcript of Cullen's testimony to the United States Attorney, stating, "In my judgment, there is probable cause to believe that this testimony is rife with perjury. Accordingly, I refer this matter to you for such investigation and action as you may deem appropriate."

Cullen appealed to this court on May 8, 1991. On June 11, 1991, the district court denied Cullen's motion to certify that the appeal was not frivolous and to direct preparation of a transcript at government expense.

The factual background of the case is, briefly, as follows. On February 5, 1983, Cullen threw a rock which struck a Milton police car containing defendant Nolan. When Nolan left the car and started walking toward Cullen, Cullen shot him with a handgun, wounding him twice. Defendant Paris came to Nolan's aid, was wounded in the back by Cullen, and then exchanged gunfire with Cullen. Cullen then ran to the nearby house of Cullen's former attorney Nolan, who is no relation to defendant police officer Nolan. When no one answered the doorbell there, Cullen broke a window in the door to get inside. Defendant MacDonald [*4] at the Milton police station received a call from attorney Nolan's residence reporting an apparent break-in. MacDonald, on police radio, notified defendant Breen, who had just arrived at the scene of the shooting. Breen then proceeded on foot to attorney Nolan's residence.

According to Cullen, Breen with gun drawn then arrested Cullen, who did not resist arrest. After Breen handcuffed Cullen, Breen struck Cullen on the head with his revolver, causing Cullen to fall unconscious. While Cullen was unconscious, Breen kicked and punched Cullen in the face, body, and extremities. When Cullen regained consciousness, Breen had his revolver pointing at the back of Cullen's head. Breen then quickly put his gun away after spotting attorney Nolan looking at them from a window. Later, Breen resumed kicking Cullen in the head and back while they were alone in the police wagon.

According to Breen, when Breen approached Cullen with gun drawn, Cullen turned to run and then Breen bear-hugged Cullen. The two swung around and fell together down some stairs into the driveway on top of some garden equipment. Cullen continued to struggle and was finally handcuffed. Subsequently, Breen noticed that Cullen [*5] had been injured in the head from the fall.

After Cullen was booked at the Milton police station, he was taken to Carney Hospital for treatment of the gash on his head. Later he was convicted in state court on charges of assault with intent to murder, assault and battery with a dangerous weapon, and illegal possession. He is currently serving his sentence.

We affirm (1) the district court's dismissal of Cullen's claims against Gaughan, Nolan, and Paris, (2) the district court's grant of summary judgment in favor of the Town of Milton, Mattaliano, and MacDonald, and (3) the district court's grant of partial summary judgment in favor of Breen for the reasons stated in the district court's May 11, 1988 order and June 2, 1988 memorandum and order.

To summarize, Cullen's claims of malicious prosecution or "false charges" against MacDonald, Breen, Gaughan, Nolan, and Paris, and of false imprisonment against MacDonald, were properly dismissed because Cullen was convicted of the criminal charges. Cullen did not adequately allege any facts to suggest he was denied a full and fair opportunity in state court to defend against these criminal charges. Absolute immunity protects Gaughan, Nolan, [*6] and Paris from liability under *42 U.S.C. § 1983* for allegedly perjured testimony at Cullen's criminal trial. *Briscoe v. LaHue, 460 U.S. 325 (1983)*. The state-law tort claim against Breen for false arrest was properly dismissed because there was no genuine factual dispute that Breen had probable cause to arrest Cullen for the shootings of Nolan and Paris. *See Julian v. Randazzo, 380 Mass. 391, 395, 403 N.E.2d 931, 934 (1980)*. In response to motions for summary judgment, Cullen adduced no adequate evidence to counter Mattaliano's and MacDonald's defenses of qualified immunity to Cullen's claims that they were responsible for a systematic scheme of unconstitutional harassment and intimidation of Cullen by Milton police. Similarly, in response to the Town of Milton's motion for summary judgment, Cullen put forward no adequate evidence to suggest that the Town had a policy or custom authorizing harassment of Cullen. *See Monell v. Dep't of Social*

*Services, 436 U.S. 658, 694 (1978).*

Cullen next raises a host of objections to the conduct of the trial of his *§ 1983* claim against Breen for unjustified and excessive [*7] use of force in effecting Cullen's arrest. We will consider first his objections to the district court's instructions to the jury.

The district court properly instructed the jury that Cullen would be entitled to punitive damages on his *§ 1983* claim only if the jury found that Breen had acted willfully, deliberately, maliciously, or with reckless disregard for Cullen's constitutional rights. *Smith v. Wade, 461 U.S. 30 (1983)*, makes it clear that this is the correct standard.

Nor did the district court err in instructing the jury not to infer anything from Breen's failure to call attorney Nolan as a witness. Such an inference -- *i.e.*, that Nolan's testimony would have been unfavorable to Breen -- might have been justified only if Breen "had it 'peculiarly within his power to produce'" Nolan as a witness. *Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973 (2nd Cir. 1985)* (quoting *Chicago College of Osteopathic Medicine v. George A. Fuller Co., 719 F.2d 1335, 1353 (7th Cir. 1983))*. Cullen, however, did not set forth any evidence or raise any argument suggesting that attorney Nolan was not equally [*8] available to both parties. Cullen contends that attorney Nolan was more available to Breen because Nolan lives in Milton and because Cullen is in prison, but this would pose no obstacle to Cullen's calling attorney Nolan at trial.

Cullen further objects to the district court's failure to instruct the jury (1) that it could infer that a subordinate police official performed a duty to report to his superior, (2) on the legal standards governing whether Breen had a "duty of inquiry" to gain knowledge of certain facts, and (3) on the legal standards governing the effect of an attempt by Breen or others to fabricate or suppress evidence. The district court did not err, however, because none of this was part of Cullen's only surviving claim against Breen, which was for use of excessive force.

The district court was justified in its refusal to read to the jury the actual statutory and constitutional provisions Breen was alleged to have violated, or to specifically instruct the jury that all persons are equal before the law. No such instructions were required. "The district court's choice of jury instructions is a matter of discretion." *Calhoun v. Acme Cleveland Corp., 798 F.2d 559, 564 (1st Cir. 1986).* [*9]

Certainly the district court acted properly in placing Breen's counterclaim for assault and battery on the same verdict form as Cullen's claim for excessive force. The claims were entitled to equal treatment by the court; the merits of each claim were for the jury to determine.

Cullen next argues that he was prejudiced by the district court's altering of Cullen's proposed order of witnesses by calling MacDonald first in order to accommodate MacDonald's schedule. Cullen complains he was not prepared to question MacDonald because he wanted to hear other testimony first and then use MacDonald's testimony to impeach the prior testimony. As defendants point out, however, Cullen had years before trial to depose witnesses and prepare examination for potential impeachment purposes. Cullen also says that having MacDonald testify first confused the jury about Cullen's theory that there was a police conspiracy to harass Cullen. Since the claim of excessive force against Breen was the only one being tried, this theory was tangential at best. We see no abuse of the trial court's discretion here. *See United States v. Nivica, 887 F.2d 1110, 1121 (1st Cir. 1989)* ("matters [*10] of trial administration are committed to the district court's discretion"), *cert. denied, 494 U.S. 1005 (1990).*

Cullen asserts that the district court erred in dismissing Cullen's state-law claim against Breen for assault and battery. There was no such dismissal, however. Cullen's December 26, 1990 amended complaint against Breen mentioned no such claim. Although Cullen's previous complaint did, an amended complaint ordinarily replaces the prior complaint. *Cicchetti v. Lucey, 514 F.2d 362, 365 n.5 (1st Cir. 1975).* The trial court acted properly in trying Cullen's amended complaint.

Cullen's final set of issues on appeal all challenge the district court's evidentiary rulings at trial. First, Cullen argued in his motion for a new trial that the district court erred in admitting into evidence a photograph of the scene of Cullen's arrest. He does not press this point in his brief on appeal. In any event, this is not the kind of potentially inflammatory photograph that might be thought unfairly prejudicial to Cullen. Cullen does not dispute defendants' assertion that he contemporaneously objected to admission of the photograph solely on the basis [*11] that it was inaccurate. The district court permissibly left it to the jury to determine its accuracy.

Cullen attacks the district court's refusal under *Fed. R. Evid. 403* to permit Cullen to demonstrate to the jury the scar on his head. The district court, however, had discretion under *Fed. R. Evid. 403* to exclude evidence upon finding that its prejudicial effect would outweigh its probative value. *Miller v. Town of Hull, 878 F.2d 523, 529* (1st Cir.), *cert. denied, 493 U.S. 976 (1989)*. Certainly the court did not abuse that discretion here. Since Breen did not dispute that Cullen received a head wound on the day of his arrest, the demonstration of the scar -- which might have emotionally affected the jury -- would have had very little probative value.

Cullen objects to the district court's decision to exclude as hearsay a brief report, dated the day of Cullen's arrest, which was filed by Edward Villard, a Milton police officer, and signed by MacDonald. The report states: "It took the three of us to restrain and cuff the suspect due to suspect's uncommon strength and resistance. Suspect was bleeding profusely from the head due to striking [*12] it on wall when falling from stairs. I received minor abrasions and laceration to hands and knees, also torn uniform jacket and pants." Villard had been subpoenaed to appear at trial, but wrote a letter requesting that he not be required to appear on account of family medical problems. Cullen acquiesced in Villard's request, but instead offered into evidence this report.

Cullen argues that the report would have impeached Breen's testimony because Villard stated in the report that he helped Breen handcuff Cullen. This contradicted Breen's testimony that Villard was not present when Breen handcuffed Cullen. Cullen also says that the report would have bolstered his contention that the Milton police falsified their accounts of his arrest. Cullen's theory is that contradictions in the police accounts of his arrest are the result of the police officers' apparent failure to collaborate adequately on a single false account.

According to Cullen, Villard's report should have been admitted under the exceptions to the hearsay rule contained in *Fed. R. Evid. 803(8)(C)* (which renders admissible an investigatory report "unless the sources of information or other circumstances indicate lack of trustworthiness"), [*13] 803(8)(B) (which renders admissible in civil cases police reports concerning "matters observed pursuant to duty imposed by law as to which matters there was a duty to report"), 803(6) (rendering admissible business records), and 803(24) (the catch-all exception).

The admissibility of an investigatory report under *Rule 803(8)(C)* is committed to the discretion of the district court, *Smith v. MIT, 877 F.2d 1106, 1113* (1st Cir.), *cert. denied, 493 U.S. 965 (1989)*, and depends on a number of factors, including the availability of the declarant, "the timeliness of the investigation; . . . the investigator's skill and experience; [and] whether a hearing was held. . . ." *Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167 n.11 (1988)*. Furthermore, the factors which govern the reliability and admissibility of investigatory reports under *Rule 803(8)(C)* have been held to also govern the admissibility of police investigatory reports offered for admission as business records under *Rule 803(6)*. See *United States v. Oates, 560 F.2d 45, 68-84 (2nd Cir. 1977)*.

Applying these standards, officer Villard's police [*14] report does not appear to be the product of any investigation at all. Cullen has said nothing to suggest otherwise. There is no dispute that Villard did not interview anyone or conduct a search of the scene. Villard apparently merely wrote down his own experience of the events in a very brief report. Under the circumstances, the district court acted within its broad discretion in concluding that Villard's report lacked sufficient indicia of trustworthiness to warrant its admission under *Rules 803(8)(C)*, *803(6)*, or *803(24)*. See *Matthews v. Ashland Chemical, Inc., 770 F.2d 1303, 1310 (5th Cir. 1985)* (investigatory report can be excluded where no thorough investigation was conducted).

Cullen's position that the report was admissible under *Rule 803(8)(B)* would appear to have substantially more merit. However, even if, *arguendo,* exclusion of Villard's report were found to be in error, Cullen's substantial rights were not affected thereby. See *Fed. R. Evid. 103*. The report was offered almost solely for impeachment purposes; while the report does state that Cullen suffered a gash on the head, Breen did not dispute that. The report's value for impeachment appears [*15] weak. The inconsistency as to who helped Breen handcuff Cullen is minor and tangential to the central issue in the case, Breen's use of force against Cullen. Indeed, the report supports Breen's testimony and contradicts Cullen's on this central issue, since it states that claimant suffered the gash by falling downstairs. Thus, the report is by no means wholly favorable to Cullen's position.

Finally, Cullen disputes the district court's evidentiary rulings under the medical records exception to the hearsay rule contained in *Fed. R. Evid. 803(4)*. The district court excluded from evidence a Carney Hospital bill for medical services rendered to Cullen which states, by way of explanation of its charges, "Diagnosis: Assaulted, Multiple Injuries." The district court admitted into evidence a Carney Hospital record which states, under the heading "Nurses Notes," that Cullen "reportedly fell down several stairs, hit head against wall." Since on the current state of the record it is not clear whether or not Cullen raised a timely objection to admission of this latter statement -- a matter which the parties dispute -- we shall assume for present purposes that Cullen did.

*Fed. R. Evid. 803(4)* [*16] permits admission of hearsay statements "made for purposes of medical diagnosis or treatment and describing . . . the inception or general character of the cause or external source [of symptoms, pain, or sensations] insofar as reasonably pertinent to diagnosis or treatment." Both the statements that Cullen was "assaulted" and that Cullen "fell down several stairs, hit head against wall" arguably would appear to satisfy the second prong of *Rule 803(4)* in that they describe the cause or external source of Cullen's injury -- a matter which would appear to be reasonably pertinent to diagnosis or treatment -- without expressly ascribing fault to any individual. *See, e.g., United States v. Iron Thunder, 714 F.2d 765, 772-73 (8th Cir. 1983)*. On the other hand, it is not clear on this record whether Cullen made an adequate showing that the statement that he was "assaulted" was made for the purpose of obtaining medical diagnosis or treatment under the first prong of *Rule 803(4). See United States v. Narciso, 446 F.Supp. 252, 289 (E.D.Mich. 1976)*.

We need not tarry, however, to resolve the question whether the district court's evidentiary rulings on [*17] one or both of these statements constituted an abuse of discretion. Even if we were to find, *arguendo,* that the district court erred, Cullen's substantial rights were not affected. There is no dispute that Cullen was brought to Carney Hospital by two Milton police officers. The hearsay statement that Cullen "reportedly fell down several stairs, hit head against wall" -- perhaps made to hospital personnel by a police officer -- was wholly cumulative of Breen's and Paris' testimony at trial that Cullen had suffered his head injury in that manner. Similarly, the hearsay statement that Cullen was "assaulted" -- perhaps made to hospital personnel by Cullen -- would have been, if admitted, wholly cumulative of Cullen's testimony that he had suffered an assault by Breen. "The improper admission of hearsay testimony which is merely cumulative on matters shown by other admissible evidence is harmless error." *Coughlin v. Capitol Cement Co., 571 F.2d 290, 307 (5th Cir. 1978). See Pino v. Protection Maritime Ins. Co., 599 F.2d 10, 13-14 (1st Cir.), cert. denied, 444 U.S. 900 (1979)*. Similarly, the improper exclusion of evidence [*18] that is merely cumulative is also harmless error. *McKinnon v. Skil Corp., 638 F.2d 270, 276 (1st Cir. 1981)*. As this court observed in *Petrocelli v. Gallison, 679 F.2d 286, 292 (1st Cir. 1982)*, "A mere reiteration via the hospital record [of plaintiff's version of events] would have added little beyond corroborating what [plaintiff] had already told the jury."

We have considered Cullen's other arguments and find them meritless.

Cullen's motion for an order directing preparation of a transcript at government expense is *denied.* For all the reasons stated above, we agree with the district court that Cullen's appeal does not present a substantial question for purposes of *28 U.S.C. § 753(f)*.

The judgment of the district court is *affirmed.*